# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 23-1214

NATIONAL SHOOTING SPORTS FOUNDATION,
*Plaintiff-Appellee*,

v.

ATTORNEY GENERAL OF NEW JERSEY,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (No. 3:22-cv-06646-ZNQ)

**Reply in Support of Emergency Motion for Stay Pending Appeal**

MATTHEW J. PLATKIN
 *Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
 *Solicitor General*

MICHAEL L. ZUCKERMAN
 *Deputy Solicitor General*

SARA M. GREGORY
 *Assistant Attorney General*

TIM SHEEHAN
AMANDA I. MOREJÓN
CHANDINI JHA
JUSTINE M. LONGA
PHOENIX N. MEYERS
SAMUEL L. RUBINSTEIN
 *Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(609) 789-8684
michael.zuckerman@njoag.gov

*Attorneys for Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ............................................................................................................1

ARGUMENT .....................................................................................................................1

    I.   THE STATE WILL LIKELY PREVAIL ON APPEAL. ................................1

        A.   NSSF Has Failed To Show Article III Jurisdiction. ....................................1

        B.   Section 58-35 Is Not Preempted. ..................................................................4

        C.   Even On Its Own Logic, The District Court's Injunction Is Overbroad. ....7

        D.   NSSF's Unreached Claims Also Lack Merit. ..............................................9

    II.  THE EQUITIES LIKEWISE WARRANT A STAY ......................................10

CONCLUSION ...............................................................................................................11

CERTIFICATE OF COMPLIANCE ..........................................................................12

CERTIFICATE OF SERVICE .....................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Hope v. Miye Chon*,
  938 F.3d 389 (3d Cir. 2019) ............................................................................. 10

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ................................................................................. 10

*Hernandez-Cruz v. Att'y Gen.*,
  764 F.3d 281 (3d Cir. 2014) ................................................................................ 5

*Kingdomware Techs. v. United States*,
  579 U.S. 162 (2016) ............................................................................................ 7

*Komlodi v. Picciano*,
  89 A.3d 1234 (N.J. 2014) .................................................................................... 6

*Lynch v. Scheininger*,
  744 A.2d 113 (N.J. 2000) .................................................................................... 6

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
  538 U.S. 644 (2003) .......................................................................................... 10

*Plains All Am. Pipeline L.P. v. Cook*,
  866 F.3d 534 (3d Cir. 2017) ................................................................................ 8

*Sherwin-Williams Co. v. County of Delaware, Pa.*,
  968 F.3d 264 (3d. Cir. 2020) ................................................................. 1, 2, 3, 11

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................ 3

*TitleMax of Delaware, Inc. v. Weissmann*,
  24 F.4th 230 (3d Cir. 2022) .............................................................................. 10

**Statutes**

15 U.S.C. § 7901(b)(1) ...................................................................................... 7

15 U.S.C. § 7903(5)(A) ............................................................................. 5, 7, 8

15 U.S.C. § 7903(5)(A)(iii)(II) ........................................................................ 5

15 U.S.C. § 7903(5)(B) ..................................................................................... 7

18 Pa. Stat. Ann. § 4304(a)(1) ......................................................................... 5

29 U.S.C. § 1104(a)(1)(B) ................................................................................ 5

29 U.S.C. § 1105(a)(1) ..................................................................................... 4

720 Ill. Comp. Stat. Ann. 5/26-1(a) ................................................................. 5

N.J. Stat. Ann. § 2C:58-35(a)(2) .................................................................... 11

N.J. Stat. Ann. § 2C:58-35(e) .......................................................................... 6

Tex. Penal Code Ann. § 42.01(a) .................................................................... 5

**Treatises**

Restatement (Second) of Torts (1965) ............................................................. 6

# INTRODUCTION

NSSF's brief is remarkable for how quickly it abandons the reasoning of the decision below, and how pointedly it declines to defend the facial injunction it obtained. NSSF identifies no way to distinguish this Court's Article III precedent that rejects pre-enforcement challenges to hypothetical public-nuisance suits. It fails to justify the atextual view that New Jersey's law is not "applicable to" the sale of firearms because it is not "sufficiently concrete." And it does not try to defend the scope of the injunction, pressing only a forfeiture defense belied by the proceedings below. Instead, NSSF focuses on claims that were never addressed below, but each lacks merit, and several could not (even if accepted) support the injunction below. Meanwhile, New Jersey is still suffering irreparable harm from its inability to hold accountable unscrupulous actors—who may not even be NSSF members—while NSSF cannot show that its members would be harmed by a stay unlikely to exceed the length of time it waited to seek preliminary relief. A stay is amply justified.

# ARGUMENT

**I.　THE STATE WILL LIKELY PREVAIL ON APPEAL.**

　A.　<u>NSSF Has Failed To Show Article III Jurisdiction.</u>

NSSF's suit runs directly into *Sherwin-Williams Co. v. County of Delaware, Pa.*, 968 F.3d 264 (3d. Cir. 2020). That case unfolded against the backdrop of public-nuisance suits the paint company had faced from two Pennsylvania counties. *Id.* at

267. Sherwin-Williams then sued a third county that it alleged had retained (or was retaining) outside counsel to do the same. *Id.* This Court rejected that preemptive strike as inconsistent with standing and ripeness, *id.* at 269-72, because a speculative, pre-enforcement suit against future public-nuisance litigation assumed "not only that the County will sue, but also its theory of liability, its litigation tactics, and that the County will prevail," *id.* at 270. *See also id.* (this "uncertainty—and all of the contingencies that go along with it—expose[d]" the company's "inability to allege an existing injury or one that is certainly impending"); *id.* at 272 ("The uncertainty surrounding these fundamental questions renders these claims unfit for judicial resolution.").

The sole basis NSSF provides for distinguishing *Sherwin-Williams* is that it involved "a blunderbuss challenge to potential future common-law suits," Opp.9, but it is unclear why this helps NSSF. Sherwin-Williams's suit was comparably precise: the operative complaint alleged that Delaware County was hiring counsel to file lead-paint nuisance lawsuits, based on two preexisting actions. 968 F.3d at 267-68. NSSF, by contrast, obtained an order enjoining *all* nuisance suits, against anyone, even though none have been filed, and even though the most it could say—four-and-a-half months after enactment—was that the statute "could be deployed" in some unlawful (and atextual) ways, *e.g.*, ECF 1 at ¶ 61; ECF 4-1 at 13. To the degree it is harder to establish jurisdiction for a "blunderbuss challenge"—a point

for which NSSF offers no support—that *undermines* NSSF's cause. And if NSSF members do face suits for their own conduct, this Court identified the solution: "raise those claims as affirmative defenses." *Sherwin-Williams*, 968 F.3d at 270.

*Sherwin-Williams* also disproves NSSF's refrain that New Jersey's Article III point is inconsistent with its irreparable harm. The State has never denied that it intends to one day bring suits based on specific wrongdoing when uncovered. But it is unknowable which parties will be sued and for what conduct, what the "theory of liability" will be, what "litigation tactics" will arise, and who will prevail—the questions that make a pre-enforcement strike "unfit for judicial resolution." *Id.* at 270, 272. The problem with the injunction below is that it bars *any* action, of any kind, against anyone, whatever the facts—which disables New Jersey from protecting public safety *today*. That is fully consistent with the impossibility of litigating the precise contours of some unknown future case.

In contrast, this case is nothing like *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). There, two organizations challenged a state law prohibiting "false statement[s]" made in the course of an electoral campaign. *Id.* at 151-52. Both organizations alleged that they intended to disseminate materials accusing candidates of voting to allow tax dollars to fund abortions, *id.* at 156, 161-62, and the state commission already found probable cause to believe one had violated the statute by doing so, *id.* at 154—a sharp contrast to the lack of allegations regarding

3

"arguably proscribed" conduct here. *Id.* at 162. Moreover, there is no "history of past enforcement" showing a credible "threat of future enforcement," *id.* at 164, where NSSF sued before the law had ever been enforced against anyone, and without any specific facts or allegations about conduct even arguably implicating the statute.

B.   Section 58-35 Is Not Preempted.

NSSF hardly defends the district court's sole reasoning for the injunction: that Section 58-35 is not "applicable to" the sale of guns because it does not impose a sufficiently "concrete obligation with which industry members can confidently ensure compliance." ECF 17 at 12. NSSF does not identify dictionary definitions to support that view, examples from common use, or any judicial opinion addressing PLCAA (or any other statute) that would support this construction—not even a concurrence or dissent. Nor does NSSF refute the State's arguments. It cannot be blamed: no authority supports this atextual view.

NSSF's only textual response is to argue that civil actions under the predicate exception must plead "knowing" violations of a law. Opp.11. But that is no basis to hold that the "applicable" state statute must itself be "sufficiently concrete." To the contrary, statutes often imposes liability for "knowing" violations of a duty to be "reasonable" or "prudent." ERISA is one example—it prohibits knowingly participating in a breach of fiduciary duty, 29 U.S.C. § 1105(a)(1), which includes failing to discharge duties with the care that a "prudent" person would use under the

circumstances, *id.* § 1104(a)(1)(B). Disorderly conduct laws prohibit "knowingly" acting "in such unreasonable manner as to alarm or disturb another." 720 Ill. Comp. Stat. Ann. 5/26-1(a); *see also* Tex. Penal Code Ann. § 42.01(a). And this Court has parsed a law applying a "knowing mens rea" to action as broad as "endanger[ing] the welfare of [a] child by violating a duty of care, protection or support." 18 Pa. Stat. Ann. § 4304(a)(1); *Hernandez-Cruz v. Att'y Gen.*, 764 F.3d 281, 285-86 (3d Cir. 2014) (noting breadth of this general duty). Indeed, the predicate exception *itself* permits suits where industry members have "knowingly violated" laws that (per one of the two examples) prohibit selling a firearm despite "having reasonable cause to believe" the actual buyer is federally prohibited. 15 U.S.C. § 7903(5)(A)(iii)(II).[1] Requiring that lawsuits turn on "knowing" violations thus fails to prove that Congress silently required the "applicable" laws to also be "sufficiently concrete."

NSSF then pivots to PLCAA's separate proximate-cause language—an issue the district court never reached and that its injunction thus does not rest on. But NSSF misses the mark, because Section 58-35 expressly requires a showing of proximate cause. It forces the State to prove that "harm to the public was a

---

[1] NSSF notes the predicate exception's two examples, asserting that both involve "concrete legal obligations," Opp.11, but it offers no answer to the precedents that a statute that "includes" examples is not *limited* by them; the more straightforward commonalities besides "concreteness"; or the point that these exceptions—especially the exception allowing suits based on what sellers had "reasonable cause to believe"—are not particularly concrete.

5

*reasonably foreseeable effect of [defendant's] conduct*, notwithstanding any intervening actions, including, but not limited to, criminal actions by third parties." N.J. Stat. Ann. § 2C:58-35(e) (emphasis added). That is an unremarkable approach to proximate cause: New Jersey courts recognize that "intervening causes that are 'foreseeable' or the 'normal incidents of the risk created' will not break the chain of causation and relieve a defendant of liability." *Komlodi v. Picciano*, 89 A.3d 1234, 1252 (N.J. 2014) (citation omitted).

NSSF's contention (Opp.12-13) that Congress's reference to "proximate cause" *must* have incorporated a different definition of proximate cause rests on two mistakes. First, NSSF's assumption—that "true proximate causation" (Opp.12) is broken by a third party's foreseeable intervening acts—is wrong, and seems to conflate "intervening" and "superseding" causes. Put simply, reasonably foreseeable intervening causes (the concept in Section 58-35) do not break causation, while superseding causes are an extraordinary *type* of intervening cause that are *not* reasonably foreseeable and therefore do break the chain. *See* Restatement (Second) of Torts §§ 440-42 (1965); *Lynch v. Scheininger*, 744 A.2d 113, 122-26 (N.J. 2000). Second, "proximate cause" has long enjoyed an array of meanings across States, a point NSSF has never denied, and there is no evidence that Congress intended to privilege one over another. Where Congress in PLCAA intended to pick one version

6

of a tort term with otherwise-varied definitions, it said so expressly. *See* 15 U.S.C. § 7903(5)(B) (defining "negligent entrustment").

Finally, NSSF moves beyond statutory text and simply raises the specter that Section 58-35 will swallow "PLCAA whole"—which it then also uses to try to evade the binding presumption against preemption. Opp.13-15. As a threshold matter, however, the "prefatory clauses" that NSSF cites "cannot change the scope of the operative clause." *Kingdomware Techs. v. United States*, 579 U.S. 162, 173 (2016). Moreover, the tension NSSF imagines is illusory. The parties *agree* that Congress sought to bar suits against the firearms industry "for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others." ECF 17 at 13 (quoting 15 U.S.C. § 7901(b)(1)). NSSF simply misreads Section 58-35, treating it like a vicarious-liability statute when it actually targets sellers' *own* misconduct—just as PLCAA's exceptions allow, *see* 15 U.S.C. § 7903(5)(A), and just as PLCAA's sponsors expected States would continue to do, *see* ECF 11 at 21-22 & n.3. Section 58-35 does not clash with Congress's purposes or plain language, and the presumption against preemption plainly applies.

C.   Even On Its Own Logic, The District Court's Injunction Is Overbroad.

NSSF's decision not to defend the injunction's scope is even more striking. Because NSSF sought a facial injunction against *any* enforcement of Section 58-35 against it and its members, ECF 4-1 at 2-3; ECF 4-4, it had to show that "no set of

circumstances exists under which the [law] would be valid." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 543 (3d Cir. 2017). NSSF now confusingly says that "even if there may be some actions that could be brought under [Section 58-35] that would not be preempted by the PLCAA, that alone would not justify narrowing the injunction pending appeal." Opp.16. That is backwards. If there are applications of Section 58-35 that would *not* be prohibited on the district court's sole preemption holding (as no party now contests), then the facial injunction is necessarily invalid.

NSSF's only response—that the State allegedly forfeited reliance on "any other exception to" PLCAA—is misguided. For one, in robustly discussing NSSF's inability to satisfy the facial-challenge burden, ECF 11 at 14-18, the State observed that NSSF "implicitly concede[d] that a suit under Section 58-35 would not be preempted where it does not hinge on the subsequent misuse of a firearm by a third party, or involves negligent entrustment or negligence per se, does not implicate PLCAA at all (if, say, the seller is not federally licensed), or where it is premised on a theory of knowledge and causation that even NSSF would accept." ECF 11 at 18 n.2 (citations omitted); *see also* ECF 25-1 at 15-16; ECF 28 at 4 & n.2. NSSF did not disagree.

In any event, NSSF's forfeiture theory makes little sense. PLCAA preempts some lawsuits but then carves out six exceptions. 15 U.S.C. § 7903(5)(A). NSSF, the plaintiff, sought to meet its burden for a preliminary injunction by arguing that

8

only *one* of those exceptions is inapplicable, ECF 4-1 at 5-12, so the State explained why that argument failed—while noting that other exceptions precluded facial relief too. NSSF never disputed this (and still does not), so it is unclear what else the State should have said. At bottom, NSSF's decision to exclusively challenge hypothetical applications of Section 58-35 that would rely on the predicate exception is a reason it is *not* entitled to this facial injunction—not a cudgel to wield against the State.

### D. NSSF's Unreached Claims Also Lack Merit.

NSSF spends a sizable portion of its brief pressing arguments the district court did not reach and thus did not rest its injunction on. *Compare* Opp.17-21, *with* ECF 17 at 14 & n.2. Indeed, several of these alternative claims *could not*—even if accepted—support the injunction. NSSF's First Amendment theory challenges Section 58-35's "marketing restrictions," Opp.17-18—meaning this claim cannot support enjoining future suits relating to, *e.g.*, sales practices. And NSSF's Commerce Clause claim challenges enforcement based on "wholly out-of-state conduct," Opp.19—again far narrower than the order below.

In any event, NSSF's unreached claims lack merit. Section 58-35 does not contravene the Commerce Clause, as it has neither protectionist purpose nor effect and the extraterritorial-effects cases NSSF cites are cabined to "price control or price affirmation" laws. *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003); *see TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230, 238-41 & nn.7, 9-10

(3d Cir. 2022); ECF 11 at 30-33. As to the First Amendment, Section 58-35's marketing provisions are permissible, viewpoint-neutral regulations of commercial speech that satisfy intermediate scrutiny (and, for that matter, the law is not unconstitutionally vague)—indeed, it is difficult to see how Section 58-35 could even be enforced against lawful, non-misleading speech (and it never has been). *See Bank of Hope v. Miye Chon*, 938 F.3d 389, 395 & n. (3d Cir. 2019); ECF 11 at 33-39. And the Second Amendment is neither violated nor implicated here, as it does not confer "a standalone right to *sell* guns," and NSSF does not allege that Section 58-35 impairs individuals' ability to possess guns. *Drummond v. Robinson Twp.*, 9 F.4th 217, 230 (3d Cir. 2021); ECF 11 at 39-40.

## II. THE EQUITIES LIKEWISE WARRANT A STAY.

A stay is also necessary because the preliminary injunction undermines public safety, producing an exception from civil liability for even the most unscrupulous actors—including dealers who sell firearms despite clear signs that the buyer poses a serious threat, dealers who persistently sell to straw purchasers despite red flags, or dealers who routinely help buyers evade background checks. While NSSF believes these risks are "illusory" because some misconduct *could* lead to criminal charges, Opp.16, NSSF both ignores that the criminal law is significantly more cabined and, importantly, ignores civil-enforcement tools Section 58-35 supplies to

protect public safety—including abatement and immediate injunctive relief—that are unavailable in the criminal context. *See* N.J. Stat. Ann. § 2C:58-35(a)(2), (b).

By contrast, NSSF has not shown any irreparable harm from an order allowing the State to continue enforcing this public-safety law. While NSSF claims its fears of suit count as irreparable harm because its members allegedly have "immunity" under PLCAA (a point the State has never conceded), its members can raise any immunity arguments "as affirmative defenses" right at the start of any hypothetical future suit in a motion to dismiss, well before the discovery and trial it fears. *See Sherwin-Williams*, 968 F.3d at 270. Nor can NSSF plausibly claim that its members would be harmed by a stay that would last little longer than the delay it incurred before even filing suit.

## **CONCLUSION**

This Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

MATTHEW J. PLATKIN
Attorney General of New Jersey

By:   /s/ Michael L. Zuckerman
Michael L. Zuckerman
Deputy Solicitor General

Dated:  March 9, 2023

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1) and L.A.R. 31.1(c), I certify that:

1.　This brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(C) because the brief contains 2,593 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and thus does not exceed the 2,600-word limit.

2.　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), having been prepared in a proportionally spaced typeface of at least 14 points set in Times New Roman.

3.　This brief complies with L.A.R. 31.1(c) in that prior to being electronically submitted, it was scanned by the following virus-detection software and found to be free from computer viruses:

>	Company: McAfee, Inc.
>	Product: McAfee Endpoint Security, version 10.7.

Dated: March 9, 2023　　　　　　　　　／s/ Michael L. Zuckerman
　　　　　　　　　　　　　　　　　　Michael L. Zuckerman
　　　　　　　　　　　　　　　　　　Deputy Solicitor General
　　　　　　　　　　　　　　　　　　Office of the New Jersey Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.

          /s/ Michael L. Zuckerman
Michael L. Zuckerman
Deputy Solicitor General
Office of the New Jersey Attorney General