# United States Court of Appeals

*for the*

# Third Circuit

---

Case No. 23-1214

NATIONAL SHOOTING SPORTS FOUNDATION,

*Plaintiff-Appellee*

– v. –

ATTORNEY GENERAL NEW JERSEY,

*Defendant-Appellant.*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (No. 3:22-cv-06646-ZNQ)

## BRIEF OF LEGAL SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT

Timothy M. Haggerty
Rupita Chakraborty
Alexandra Elenowitz-Hess
FRIEDMAN KAPLAN SEILER
   ADELMAN & ROBBINS LLP
1 Gateway Center
Newark, New Jersey 07102
(973) 877-6400

– and –

7 Times Square
New York, New York 10036
(212) 833-1100

*Attorneys for Amici Curiae*
   *Legal Scholars*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICI CURIAE* ............................................. 1

SUMMARY OF ARGUMENT ....................................................... 1

ARGUMENT .................................................................................. 6

I.  A1765 is a Predicate Statute Because It Applies to the Sale and Marketing of Firearm Products ........................................................ 6

II.  Under Basic Principles of Tort Law, A1765 is Susceptible to Knowing Violation, which Could be Considered a Proximate Cause of Harm Resulting from Unlawful Third-Party Misuse of a Firearm Product ................................................................................................ 9

    A.  It is Possible to Knowingly Violate a Reasonable Care Standard of Conduct ............................................................... 10

    B.  A Gun Industry Defendant's Violation of A1765 Could be a Proximate Cause of Harm Resulting from Third-Party Unlawful Misuse of a Firearm Product ............................................... 13

III.  A1765 Is Consistent with PLCAA's Broader Text and Structure ................ 17

    A.  PLCAA's Explicit Commitment to Protecting Second Amendment Rights is Expressed in the Predicate Exception's Knowledge and Proximate Causation Requirements ........................... 18

    B.  PLCAA's Explicit Commitment to Separation of Powers is Expressed in the Predicate Exception's Distinction Between Legislatively Created Causes of Action, Which May Serve as the Basis for a Lawsuit Against the Industry, and Judge-Made Causes of Action, Which May Not ..................................... 20

    C.  PLCAA's Explicit Commitment to Federalism is Expressed in the Predicate Exception's Invitation to State Legislatures to Enact Statutes that Impose Obligations and Prohibitions on the Firearms Industry .............................................................. 25

**Page**

CONCLUSION ..................................................................................26

APPENDIX A: List of *Amici Curiae* .......................................................27

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babula v. Robertson,*
  536 N.W.2d 834 (Mich. Ct. App. 1995) ............................................. 11

*Byrd v. Shannon,*
  715 F.3d 117 (3d Cir. 2013) ............................................................. 17

*Cain v. Vontz,*
  703 F.2d 1279 (11th Cir. 1983) ....................................................... 14

*City & Cnty. of San Francisco v. Purdue Pharma L.P.,*
  No. 18-CV-07591, 2022 WL 3224463 (N.D. Cal. Aug. 10, 2022) .................... 12

*Darnell v. Pineiro,*
  849 F.3d 17 (2d Cir. 2017) ............................................................. 11

*Fowler v. Akzo Nobel Chemicals, Inc.,*
  251 N.J. 300 (2022) ..................................................................... 10

*Garcia v. Vanguard Car Rental USA, Inc.,*
  540 F.3d 1242 (11th Cir. 2008) ....................................................... 20

*Hernandez-Cruz v. Att'y Gen. of U.S.,*
  764 F.3d 281 (3d Cir. 2014) ........................................................... 11

*Hill v. Yaskin,*
  75 N.J. 139 (1977) ...................................................................... 15

*Ileto v. Glock, Inc.,*
  565 F.3d 1126 (9th Cir. 2009) ......................................................... 22

*Montalvo v. Larchmont Farms, Inc.,*
  No. 06-CV-2704, 2010 WL 3025045 (D.N.J. July 29, 2010) ...................... 12

*Montgomery v. Allstate Prop. & Cas. Ins. Co.,*
  No. 15-CV-324, 2015 WL 3866537 (W.D. Pa. June 23, 2015) .................... 11

*Morella v. Machu,*
  563 A.2d 881 (N.J. Super. Ct. App. Div. 1989) .................................... 15

3718268.1

**Page(s)**

*In re Nat'l Prescription Opiate Litig.*,
  452 F. Supp. 3d 745 (N.D. Ohio 2020) .............................................................14

*Phillips v. Lucky Gunner, LLC*,
  84 F. Supp. 3d 1216 (D. Colo. 2015) ................................................................22

*Rieser v. D.C.*,
  563 F.2d 462 (D.C. Cir. 1977), *opinion reinstated in part on reh'g*,
  580 F.2d 647 (D.C. Cir. 1978) ...........................................................................14

*Russello v. United States*,
  464 U.S. 16 (1983) ..............................................................................................24

*In re Sept. 11 Litig.*,
  280 F. Supp. 2d 279 (S.D.N.Y. 2003) ...............................................................14

*Steele v. Kerrigan*,
  689 A.2d 685 (N.J. 1997) ....................................................................................15

*Yates v. United States*,
  574 U.S. 528 (2015)..............................................................................................22

*Young v. Allstate Ins. Co.*,
  296 F. Supp. 2d 1111 (D. Ariz. 2003) ..............................................................12

## Constitutions and Statutes

15 U.S.C. § 7901 ...................................................................................*passim*

15 U.S.C. § 7902 ..........................................................................................2, 5

15 U.S.C. § 7903 ...................................................................................*passim*

18 U.S.C. § 922(g) .............................................................................................8

18 U.S.C. § 922(n) .............................................................................................8

N.J. Stat. Ann. § 2C:58-33 .............................................................................3

N.J. Stat. Ann. § 2C:58-35 ...................................................................*passim*

U.S. Const. amend. II .................................................................................5, 18

3718268.1

**Page(s)**

**Other Authorities**

Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, THE LAW OF
    TORTS § 32 (2d ed.)............................................................................10, 11, 22, 23

Restatement (Third) of Torts, § 34 cmt. e (2010) ...................................................14

Robert Rabin, *Enabling Torts*, 49 DEPAUL L. REV. 435 (1999).............................15

Thomas O. McGarity, *The Preemption War* (2008).................................................20

Timothy D. Lytton, *Using Litigation to Make Public Health Policy:*
    *Theoretical and Empirical Challenges in Assessing Product*
    *Liability, Tobacco, and Gun Litigation*, 32 J.L. MED. & ETHICS
    556, 557 (2004) ..................................................................................................21

## INTEREST OF *AMICI CURIAE*

*Amici* are law professors with expertise in torts, statutory interpretation, constitutional law, and firearms regulation.[1] *Amici* hold a variety of views about gun control and the value of lawsuits against the gun industry. However, all *amici* agree that the district court in this case has misconstrued the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901–7903, in a manner inconsistent with its text and structure, and in plain contravention of core legal doctrines that *amici* teach and study.

No person or entity other than *amici* and their counsel authored this brief in whole or in part. No person or entity other than *amici* and their counsel contributed money intended to fund preparing or submitting this brief. *Amici* submit this brief with the consent of all parties pursuant to Fed. R. App. P. 29(a)(2).

## SUMMARY OF ARGUMENT

Congress passed PLCAA in response to civil lawsuits seeking to hold firearms manufacturers and sellers liable for harms caused by unlawful third-party misuse of their products. These lawsuits, asserting various common law claims, alleged that industry defendants failed to take reasonable precautions in the design,

---

[1] *Amici* submit this brief as individuals, not as representatives of their respective universities. The names of *amici* are listed in Appendix A, with institutional affiliations provided only for purposes of identification.

marketing, distribution, and sale of weapons, resulting in illegal gun trafficking and criminal shootings. PLCAA strips federal and state courts of jurisdiction to hear a specified class of such lawsuits—referred to as "qualified civil liability actions." 15 U.S.C. § 7902(a). However, PLCAA is not a complete bar to all lawsuits against firearms manufacturers and sellers for harms caused by unlawful third-party misuse of their products. PLCAA enumerates several categories of such lawsuits that courts may continue to hear.

At issue in this case is PLCAA's predicate exception, 15 U.S.C. § 7903(5)(A)(iii). Under the predicate exception, PLCAA's prohibition of qualified civil liability actions does not include "an action in which a manufacturer or seller . . . knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *Id*. This provision is known as the "predicate exception" because it rests on a defendant's violation of an underlying, or "predicate," statute.

A lawsuit falls within the predicate exception, and thus remains permissible under PLCAA, if it meets two criteria. First, a plaintiff must allege that a gun industry defendant violated a predicate statute, which the predicate exception describes as "a State or Federal statute applicable to the sale or marketing" of a firearm product. *Id.* Second, the plaintiff must allege that the gun industry

2

defendant "knowingly violated" the predicate statute, and that the violation "was a proximate cause of the harm for which relief is sought." *Id.*

N.J. Stat. Ann. § 2C:58-33 *et seq.* (N.J. Assembly Bill A1765, referred to herein as "A1765") subjects firearms manufacturers and sellers to civil liability for failure to take "reasonable" measures to reduce the risk of unlawful misuse of firearm products by third parties. *Amici* answer two questions presented by this appeal.

1. Does A1765 qualify as a predicate statute?

2. Could a plaintiff allege that a gun industry defendant knowingly violated A1765 and that this violation was a proximate cause of harm resulting from third-party unlawful misuse of the defendant's products?

Under the plain language of the predicate exception and basic principles of tort law, the answer to both questions is yes.

In holding otherwise, the district court made three errors. First, it misinterpreted the text of the predicate exception. The district court wrongly concluded that a predicate statute may not impose a general reasonable care standard of conduct but rather must impose "concrete" obligations. JA15-16. This is a misreading of the plain language of PLCAA, which describes a predicate statute simply as "a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). A1765, which requires a gun industry

3

member to "establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products," fits this description. N.J. Stat. Ann. § 2C:58-35(a)(2). Therefore, as a straightforward matter of statutory interpretation, A1765 is a predicate statute.[2]

Second, the district court misconstrued the basic principles of tort law upon which the predicate exception relies. The court erroneously held that a lawsuit alleging a violation of A1765 could never qualify for the predicate exception because (1) a person cannot knowingly violate a reasonable care standard of conduct and (2) the misconduct of a product manufacturer or seller can never be a proximate cause of harm if the harm is also caused by the intervening unlawful conduct of a downstream user of the product. Both of these premises contradict well-established tort doctrine.

Third, the district court mischaracterized PLCAA's overall structure in applying it to A1765. The court maintained that permitting lawsuits for violations

---

[2] *Amici* discuss section (a)(2) of A1765, which requires "reasonable controls," because the district court's opinion focuses almost exclusively on this provision. N.J. Stat. Ann. § 2C:58-35(a)(2). However, *amici*'s analysis applies equally to section (a)(1), which provides that "[a] gun industry member shall not, by conduct either unlawful in itself or unreasonable under all the circumstances, knowingly or recklessly create, maintain, or contribute to a public nuisance in this State through the sale, manufacturing, distribution, importing, or marketing of a gun-related product." *Id.* § 2C:58-35(a)(1).

of A1765 would "run afoul of the goals of the PLCAA and would, in fact, 'gut the PLCAA.'" JA16. However, careful analysis of PLCAA's overall structure confirms that the predicate exception *permits* lawsuits based on the knowing violation of a state statute that, like New Jersey's, requires reasonable precautions in the marketing and sale of firearms when the violation foreseeably increases the risk of unlawful misuse.

PLCAA's first section explicitly endorses three constitutional principles: the individual right to keep and bear arms, the separation of powers, and federalism. 15 U.S.C. § 7901. PLCAA's subsequent substantive provisions, including the predicate exception, operationalize these constitutional principles. *Id.* §§ 7902–7903. To protect Second Amendment interests, the predicate exception imposes heightened knowledge and causation requirements to eliminate liability for unwitting negligence or vicarious liability that could restrict the supply of firearms on the civilian market. To protect the separation of powers, the predicate exception prohibits courts from imposing common law standards on participants in the firearms industry but invites legislatures to do so. And to protect the principles of federalism, PLCAA preserves the ability of states to regulate the industry in accordance with regional variation in attitudes about gun ownership and how best to respond to firearms-related violence. The district court's analysis ignores the

5

structural relationship between these principles and the text of the predicate exception.

Based on these fundamental errors of statutory interpretation and tort law, the district court's analysis of PLCAA's predicate exception was wrong, and this court should reverse.

## ARGUMENT

In the discussion that follows, *amici* first explain why A1765 is unambiguously a predicate statute according to the plain text of PLCAA's predicate exception. Pt. I. *Amici* next explain that, under well-established tort doctrines regarding mental states and proximate causation, a plaintiff could allege that a gun industry defendant knowingly failed to take reasonable measures to prevent a foreseeable risk of third-party unlawful misuse of its products and that this failure was a proximate cause of harm. Pt. II. Finally, *amici* explain that the overall structure of PLCAA endorses efforts by states to subject the firearms industry to civil liability under statutes like A1765. Pt. III.

## I.    A1765 is a Predicate Statute Because It Applies to the Sale and Marketing of Firearm Products

The district court held that A1765 cannot serve as a predicate statute because it contains a general standard of reasonable care, whereas the predicate exception is triggered only by a "knowing[] violation" of a state or federal statute. JA15-16. On this basis, the district court found that A1765 is not "applicable to the sale or

3718268.1

marketing" of a firearm within the meaning of PLCAA. *Id.* ("The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated the statute.").

The district court is wrong. It conflates two separate aspects of the predicate exception, which leads it to misinterpret the exception as a whole and misapply it to A1765. First, the predicate exception delineates the category of predicate statutes—described expressly as "State or Federal" statutes that are "applicable to the sale or marketing of the product"—that, when violated, may be the basis of a civil lawsuit against a participant in the firearms industry. 15 U.S.C. § 7903(5)(A)(iii). Any statute that meets this description is, plainly, a predicate statute. Second, the predicate exception specifies the conditions under which the violation of a predicate statute can be the basis of a civil lawsuit: (1) when "a manufacturer or seller of a qualified product knowingly violated" the predicate statute and (2) when the "the violation was a proximate cause of the harm for which relief is sought." *Id.* Whether the specific violation alleged in a particular case meets these knowledge and causation elements has no bearing on whether the relevant statute is, definitionally, a predicate statute.

The district court's erroneous finding that A1765 is not "applicable to the sale or marketing" of a firearm misinterprets the syntax of the predicate exception. As a matter of syntax, PLCAA's use of the term "knowingly" does not relate to or

7

inform what constitutes a predicate statute. Rather, "knowingly" modifies

"violated," which denotes the mental state associated with the violation of a

predicate statute. One can violate a predicate statute with various mental states—

for example, maliciously, intentionally, knowingly, mistakenly, or ignorantly—all

of which would be syntactically unconnected to the definition of a predicate

statute. According to the plain meaning of the predicate exception, the status of a

law as a predicate statute is conceptually independent of the mental state—

knowingly or otherwise—with which a person may violate it.

Moreover, the predicate exception's two examples clearly illustrate that

predicate statutes need not make any reference to knowing violation. Each example

describes the knowing violation of various predicate statutes, none of which

includes any mention of a mental state. The examples demonstrate that, to qualify

for the predicate exception, a lawsuit must allege knowing violation of a predicate

statute; however, the predicate statute itself need not reference any mental state.

PLCAA's first example refers to predicate statutes that prohibit specified forms of

conduct: the making of a false recordkeeping entry, the failure to make an

appropriate recordkeeping entry, or the making of a false statement in a firearms

transaction. 15 U.S.C. § 7903(5)(A)(iii)(I). The second example refers to a

predicate statute that defines categories of individuals prohibited from possessing

or receiving a firearm. *Id.* § 7903(5)(A)(iii)(II) (specifically citing 18 U.S.C.

§§ 922(g) and (n), neither of which references any mental state requirement).
Neither of these examples requires that an applicable predicate statute include any
reference to mental state—knowing or otherwise.

Based on the text of the predicate exception and the examples it provides, a
state statute is a predicate statute if it is applicable to the sale or marketing of a
firearm product. The predicate exception does not require that a predicate statute
reference a mental state. A1765 explicitly and specifically applies to the sale and
marketing of firearms products. It is a predicate statute.

## II. Under Basic Principles of Tort Law, A1765 is Susceptible to Knowing Violation, which Could Be Considered a Proximate Cause of Harm Resulting from Unlawful Third-Party Misuse of a Firearm Product

The district court erroneously held that A1765 is not applicable to the sale
and marketing of firearms products under the predicate exception because no
future lawsuit could conceivably allege a knowing violation of the law that
proximately caused harm. JA15-16. This erroneous holding followed from two
fundamental misstatements of tort doctrine. First, the district court reasoned that
A1765's "reasonable controls" requirement—and standards of reasonable care
more generally—are not susceptible to knowing violation. *Id.* Second, the court
reasoned that the misconduct of a manufacturer or seller could never be a
proximate cause of harm also caused by the intervening unlawful misuse of its

3718268.1

product. JA16. As discussed further below, both assertions are false under well-established tort doctrine.

A.    *It is Possible to Knowingly Violate a Reasonable Care Standard of Conduct*

Knowledge is a mental state. Reasonable care is a standard of conduct. Conceptually, these are fully compatible with one another. That is, it makes perfect sense to assert that a person knowingly failed to exercise reasonable care. For example, a manufacturer knowingly fails to exercise reasonable care if it knows what a reasonable warning regarding the risk of injury associated with its product would entail but deliberately refrains from providing such a warning. *See, e.g., Fowler v. Akzo Nobel Chemicals, Inc.,* 251 N.J. 300, 307, 316 (2022) (reinstating jury verdict that defendant knowingly breached its duty to take "reasonable steps" to warn employees when it "knew that asbestos exposure causes cancer" and "[p]lacing adequate warnings on asbestos bags was clearly feasible, yet [defendant] chose not to do so"). Similarly, a firearms seller knowingly fails to exercise reasonable care if the seller knows of reasonable precautions that would reduce the risk of illegal trafficking, unlawful misuse, or inventory theft but deliberately refrains from taking such precautions.

Dobbs' LAW OF TORTS, the leading treatise on American tort law, also explains that a reasonable care standard can be knowingly violated. Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, THE LAW OF TORTS § 32 (2d ed.) ("Dobbs").

Dobbs offers the examples of driving while intoxicated and drag racing on a public highway as illustrative circumstances in which a defendant is subject to liability for engaging in an activity that the defendant knows creates an unreasonable risk of harm to others. *Id.* §§ 32, 140 (citations omitted).[3]

The district court's view that standards of conduct based on reasonable care are not susceptible to knowing violation is thus conceptually wrong and doctrinally unfounded. *See, e.g.*, *Hernandez-Cruz v. Att'y Gen. of U.S.*, 764 F.3d 281, 285 (3d Cir. 2014) ("To sustain a conviction [for endangering the welfare of a child under Pennsylvania law], a defendant must both knowingly endanger the child's welfare and knowingly violate a duty of care" to tend to children in a reasonable manner to prevent injury to those children[4]); *Darnell v. Pineiro*, 849 F.3d 17, 35–36 (2d Cir. 2017) (explaining that a prison official acts with deliberate indifference where they "intentionally or recklessly" fail "to act with reasonable care"); *Montgomery v.*

_____

[3]  Indeed, the well-established doctrinal concept of recklessness in torts, by definition, combines the mental state of knowledge with the standard of conduct of reasonable care. According to Dobbs: "In civil cases, courts find conduct to be reckless, willful or wanton when two elements concur. First, the conduct must not only create an unreasonable risk of harm to others, it must create a high degree of risk or a risk of very serious harm, or, if a lesser risk or less probable risk, then one that is easily avoided. Second, the defendant must be conscious of the risk and proceed without concern for the safety of others." Dobbs § 32.

[4]  *Babula v. Robertson*, 536 N.W.2d 834, 837 (Mich. Ct. App. 1995) (describing a duty of care to a child as a "duty to exercise prudent and reasonable care to protect [a child] from injury").

11

*Allstate Prop. & Cas. Ins. Co.*, No. 15-CV-324, 2015 WL 3866537, at *3 (W.D. Pa. June 23, 2015) (holding plaintiff could assert a bad faith claim where "plaintiffs contest such payment was knowingly/recklessly unreasonable"); *Montalvo v. Larchmont Farms, Inc.*, No. 06-CV-2704, 2010 WL 3025045, at *3 (D.N.J. July 29, 2010) (holding defendant's alleged intentional exposure of employees to hazardous chemicals was "highly egregious and violates basic notions of the social contract") (citation omitted); *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1115 (D. Ariz. 2003) (holding that a first-party claim for bad faith against an insurer, the plaintiff must allege that "the insurer knew that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed"); *see also City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-CV-07591, 2022 WL 3224463, at *51, 53 (N.D. Cal. Aug. 10, 2022) (public nuisance claim requires showing that defendant engaged in "unreasonable conduct" and did so "with knowledge of the hazard that the . . . conduct would create") (citation and internal quotation marks omitted).

To be sure, if a firearms manufacturer or seller is subject to a civil lawsuit for violation of A1765, it may prevail on the grounds that it was unaware that it was failing to maintain reasonable controls in the marketing, distribution, sale, or storage of its products—that is, the violation was not "knowing." But that is quite

12

different from the sweeping and groundless claim that a firearms manufacturer or seller could *never* know what reasonable care requires

> **B.    *A Gun Industry Defendant's Violation of A1765 Could Be a Proximate Cause of Harm Resulting from Third-Party Unlawful Misuse of a Firearm Product***

PLCAA prohibits lawsuits against manufacturers and sellers for harm "solely caused" by third-party criminal misuse of firearms products. 15 U.S.C. § 7901(b)(1) (purpose of PLCAA "[t]o prohibit causes of action . . . for the harm *solely caused* by the criminal or unlawful misuse of firearm products") (emphasis added). This prohibition is reflected in the predicate exception's proximate cause requirement, which subjects a manufacturer or seller to liability for harm caused by third-party unlawful misuse of firearms products only when the manufacturer's or seller's knowing violation of a predicate statute was a proximate cause of the harm. In such cases, the third-party unlawful misuse is not the "sole[] cause[]" of the harm. By foreseeably increasing the risk of third-party misuse, the manufacturer's or seller's misconduct is *also a proximate cause* of the harm. Liability under such circumstances in no way contradicts the goal of PLCAA to shield firearms manufacturers and sellers from vicarious liability for harms "solely caused" by third-party criminal misuse. Indeed, it fulfills the purpose of the predicate exception.

When a gun industry defendant's knowing violation of a predicate statute is a proximate cause of harm resulting from criminal misuse, the defendant is subject to liability under the predicate exception. As a matter of basic tort law, such liability is unremarkable. *See* Restatement (Third) of Torts, § 34 cmt. e (2010) ("intervening criminal acts do not categorically bar liability"). Liability for foreseeably increasing the risk of third-party criminal misconduct is commonplace, sometimes referred to as an "enabling" tort, and examples are commonplace in American jurisprudence. *See, e.g.*, *In re Sept. 11 Litig.*, 280 F. Supp. 2d 279, 310 (S.D.N.Y. 2003) (holding that plaintiffs stated claim for breach of duty of care against manufacturer of airplane used in 9/11 attack because "Boeing could reasonably have foreseen that terrorists would try to invade the cockpits of airplanes, and that easy success on their part . . . would be imminently dangerous to passengers, crew and ground victims"); *see also, e.g.*, *Cain v. Vontz*, 703 F.2d 1279, 1282–83 (11th Cir. 1983) (holding landlord could be liable for wrongful death of tenant where defendant was negligent in repairing a lock because "if the intervening criminal act was foreseeable, the original negligent party could still be liable"); *Rieser v. D.C.*, 563 F.2d 462, 479 (D.C. Cir. 1977) ("If a negligent, intentional or even criminal intervening act or end result was reasonably foreseeable to the original actor, his liability will not ordinarily be superseded by that intervening act."), *opinion reinstated in part on reh'g*, 580 F.2d 647 (D.C. Cir.

14

1978); *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 760 (N.D. Ohio 2020) (liability for marketing and distributing opioid products in a manner that foreseeably increased the risk of illegal diversion, resulting in addiction-related injury and death); *Steele v. Kerrigan*, 689 A.2d 685, 689 (N.J. 1997) (liability for serving alcohol to visibly intoxicated person who subsequently commits a criminal assault); *Hill v. Yaskin*, 75 N.J. 139 (1977) (liability for vehicle owner where owner left her keys in the unlocked and unattended car that was subsequently stolen by a thief caused injury while driving it); *Morella v. Machu*, 563 A.2d 881, 882 (N.J. Super. Ct. App. Div. 1989) ("[P]arents may be liable under common-law principles of negligence, agency, proximate cause and foreseeability if they leave their teenagers in circumstances where improper supervision while they are absent from the home is likely to lead to social gatherings where alcohol is consumed by underage drinkers who then drive and cause injuries to innocent victims."). *See generally* Robert Rabin, *Enabling Torts*, 49 DEPAUL L. REV. 435 (1999).

If it were the case that a gun industry defendant's knowing violation of a predicate statute could *never* be a proximate cause of harm resulting from third-party misuse of its products, the predicate exception's proximate cause requirement would nullify the exception altogether. This is apparent from the structure of statute: the *only* lawsuits that are subject to PLCAA preemption are lawsuits for harm resulting from unlawful third-party misuse, 15 U.S.C. § 7903(5)(A), and

3718268.1

therefore if the predicate exception permits any lawsuits at all (and it must, otherwise it would be a nullity), then it *must* permit a subset of lawsuits in which the harm resulted from unlawful third-party misuse.

For example, the predicate exception would permit the filing of a lawsuit in the following scenario: Gun Store Owner is aware of repeated thefts of handguns from an unsecured display case after regular business hours when employees are left unsupervised in the store. Gun Store Owner is additionally aware that handguns stolen in this manner have been recovered by law enforcement in criminal investigations involving illegal shootings. Despite this knowledge, Gun Store Owner takes no precautions to supervise employees during this time or to secure the display case. Subsequently, an employee steals a handgun from the case and uses it to commit an unlawful shooting. Under the predicate exception, the New Jersey Attorney General could bring a civil lawsuit against Gun Store Owner for violation of A1765 alleging that Gun Store Owner knew that reasonable procedures required efforts to either supervise employees or secure the display case to prevent inventory theft and that Gun Store Owner's failure to take such efforts proximately caused the subsequent unlawful misuse of the weapon.

Thus, the predicate exception's proximate cause requirement not only *assumes* but, in effect, *adopts* the idea of enabling torts. That is, as a matter of statutory interpretation, according to the predicate exception, a firearms

16

manufacturer or seller is subject to liability for injuries resulting from third-party unlawful misuse of its products when its knowing violation of a predicate statute increased the foreseeable risk of the unlawful misuse. This would be true where a gun industry defendant's misconduct enabled illegal trafficking, unlawful misuse, or inventory theft. A knowing violation of A1765 could fulfill these conditions.

## III.    A1765 Is Consistent with PLCAA's Broader Text and Structure

Adopting the rhetoric of the NSSF, the district court found that permitting lawsuits based on violation of A1765 "would run afoul of the goals of the PLCAA and would, in fact, 'gut the PLCAA.'" JA16 (quoting NSSF briefing). This reflects a fundamental misunderstanding of PLCAA's purpose. PLCAA does not operate as an absolute liability shield for the firearms industry but rather carefully circumscribes the jurisdiction of federal and state courts to hear only certain claims against firearms industry defendants for harms resulting from third-party unlawful misuse of firearms products. Three constitutional principles inform the scope of claims that PLCAA permits: the individual right to keep and bear arms, separation of powers, and federalism. Congress explicitly endorsed these principles in PLCAA's legislative findings and statement of purpose.[5] 15 U.S.C. § 7901(a), (b).

---

[5] *Amici* recognize that prefatory material cannot trump the plain meaning of the predicate exception. However, in this case, the prefatory material is in complete accord with the plain meaning of the predicate exception. *Amici* demonstrate a structural relationship between the prefatory material and the text of the operative

By interpreting the predicate exception in light of these structural principles, it is

clear that A1765 is precisely the type of statute that PLCAA permits states to

enact.

> A.    *PLCAA's Explicit Commitment to Protecting Second Amendment Rights is Expressed in the Predicate Exception's Knowledge and Proximate Causation Requirements*

PLCAA's first two legislative findings affirm PLCAA's explicit

commitment to the individual right to keep and bear arms under the Second

Amendment:

> (1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

> (2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

15 U.S.C. § 7901(a)(1), (2). Similarly, a subsequent finding states that, "[t]he

possibility of imposing liability on an entire industry for harm that is solely caused

by others . . . threatens the diminution of a basic constitutional right and civil

liberty. . . ." 15 U.S.C. § 7901(a)(6). This concern is further explicit in the statute's

---

provisions, including the predicate exception. Thus, both a narrow focus on the text of the predicate exception and attention to PLCAA's prefatory material compel the conclusion that a lawsuit alleging a violation of A1765 could satisfy the predicate exception. *See Byrd v. Shannon*, 715 F.3d 117, 122 (3d Cir. 2013) ("In determining whether the language of a particular statutory provision has a plain meaning, we consider the language in the context of the entire statute.").

stated purposes: "To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting." 15 U.S.C. § 7901(b)(2).

To protect the individual right of citizens to keep and bear arms, PLCAA preempts litigation against the firearms industry that could restrict the availability of firearms in the civilian market. Accordingly, the predicate exception imposes two jurisdictional requirements on permissible claims against the industry that limit litigation. First, it imposes a heightened mental state requirement that any actionable violation be made "knowingly." This limits litigation to allegations of deliberate industry misconduct while protecting firearms manufacturers and sellers from lawsuits based on unwitting negligence. Thus, the predicate exception's knowledge requirement exposes bad actors within the industry to possible lawsuits while protecting law abiding manufacturers and sellers who make honest mistakes.

Second, the predicate exception imposes a proximate cause requirement. This limits litigation to allegations that a manufacturer or seller actively facilitated the unlawful misuse of its products while shielding the industry from vicarious liability for harms caused *solely* by the illegal misconduct of others. The proximate cause requirement thereby holds gun manufacturers and sellers accountable for enabling criminal activity while shielding them from guilt by association.

19

Lawsuits alleging knowing violation of A1765 that proximately cause harm would fall squarely within the scope of permissible claims allowed by the predicate exception. As such, they would be entirely consistent with PLCAA's commitment to defending the individual right of citizens to keep and bear arms by shielding the gun industry from claims based on unwitting negligence and vicarious liability.

> B.    *PLCAA's Explicit Commitment to Separation of Powers is Expressed in the Predicate Exception's Distinction Between Legislatively Created Causes of Action, Which May Serve as the Basis for a Lawsuit Against the Industry, and Judge-Made Causes of Action, Which May Not*

PLCAA is a tort reform statute. A defining characteristic of tort reform is the preemption of state common law causes of action by alternative statutory liability rules. *See, e.g.*, *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1244 (11th Cir. 2008) (federal tort reform statute preempted state common law vicarious liability claims while providing statutory exceptions for negligent or criminal wrongdoing by the defendant); Thomas O. McGarity, *The Preemption War* 209–10 (2008) (preemption of common law claims a central feature of the tort reform movement). This represents a specific vision of the Constitution's separation of powers among different branches of government. Those who espouse this vision deem courts to encroach on legislative supremacy in the policymaking realm when courts adopt new theories of recovery while acting in their common law capacity. PLCAA's preemption of state common law causes of action is reflected in several

20

of its provisions. One of PLCAA's findings identifies novel common law actions

as an area of particular concern:

> The liability actions commenced or contemplated by the
> Federal Government, States, municipalities, and private
> interest groups and others are based on theories without
> foundation in hundreds of years of the common law and
> jurisprudence of the United States and do not represent a
> bona fide expansion of the common law. The possible
> sustaining of these actions by a maverick judicial officer
> or petit jury would expand civil liability in a manner
> never contemplated by the framers of the Constitution, by
> Congress, or by the legislatures of the several States.

15 U.S.C. § 7901(a)(7). This finding reflects a conception of separation of powers

common among advocates of tort reform, namely, the expansion of civil liability

by common law courts is an encroachment on the legislative function. *See* Timothy

D. Lytton, *Using Litigation to Make Public Health Policy: Theoretical and*

*Empirical Challenges in Assessing Product Liability, Tobacco, and Gun Litigation*,

32 J.L. MED. & ETHICS 556, 557 (2004). PLCAA further makes this separation of

powers concern explicit in the immediately subsequent finding:

> The liability actions commenced or contemplated by the
> Federal Government, States, municipalities, private
> interest groups and others attempt to use the judicial
> branch to circumvent the Legislative branch of
> government to regulate interstate and foreign commerce
> through judgments and judicial decrees thereby
> threatening the Separation of Powers doctrine. . . .

15 U.S.C. § 7901(a)(8).

21

PLCAA's exceptions reflect its central concern with preempting civil liability actions based on common law. Most of the exceptions reference statutory rather than common law tort standards of conduct. Three exceptions—including the predicate exception—apply when a manufacturer violates federal or state statutes governing the sale, marketing, transfer, and ownership of firearms or ammunition. 15 U.S.C. § 7903(A)(i), (iii), (vi). The exception for negligence *per se* (*id.* § 7903(5)(A)(ii)) similarly requires a statutory violation as the basis of liability. *See* Dobbs § 148 (negligence *per se* rests on the violation of a statutory standard). And the exception for negligent entrustment (15 U.S.C. § 7903(5)(A)(ii)) includes a statutory definition of negligent entrustment provided by PLCAA.[6] *Id.* § 7903(5)(B).

---

[6] Several courts have held that this definition does not create a new statutory standard for negligent entrustment but merely authorizes claims based on state common law doctrines of negligent entrustment, pointing out that, in the section immediately following the definition of negligent entrustment, PLCAA includes a "Rule of construction" stating that "no provision of this chapter shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 n.9 (9th Cir. 2009) ("Congress chose generally to preempt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence per se)."); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create the cause of action. . . . Accordingly, the claim arises under state law."). Notwithstanding this latter provision, PLCAA's definition of negligent entrustment must, at the very least, preempt any state common law doctrines of negligent entrustment that establish a lower threshold for liability. Otherwise, it would be rendered surplusage. *Yates v. United States*, 574 U.S. 528,

22

To be sure, some of PLCAA's findings do suggest more sweeping preemption that makes no distinction between common law and statutory bases for liability. For example, one finding declares broadly,

> Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. § 7901(a)(5); *see also id.* § 7901(a)(3). However, PLCAA's exceptions flatly contradict any implication that PLCAA preempts *all* liability for statutory violations.

Moreover, other provisions in the "Findings" and "Purposes" sections signal limits on PLCAA preemption. For example, PLCAA's first stated purpose is:

> To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm *solely caused by* the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

---

543 (2015) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (citation omitted).

*Id.* § 7901(b)(1) (emphasis added). The qualifying phrase "solely caused by," as applied to the predicate exception, indicates that PLCAA preemption does not apply to instances where wrongdoing by a manufacturer, distributor, dealer, or importer was a proximate cause of harm caused by the criminal misuse of a firearm.[7]

To uphold the conception of separation of powers endorsed by the statute's findings and purposes, PLCAA preempts lawsuits against the industry that rely on common law (i.e., judicially created) liability and insists that legislatures maintain exclusive authority over the creation of legal duties related to the manufacture and sale of firearms. Accordingly, the predicate exception permits lawsuits against the gun industry for harms resulting from the unlawful third-party misuse of firearms products only where, as here, such lawsuits are based on the violation of statutes.

---

[7]  This stands in contrast to 15 U.S.C. § 7903(5)(a)(v) where "the discharge of a product . . . caused by a volitional act that constituted a criminal offense . . . shall be considered *the sole proximate cause* of any resulting death, personal injuries or property damage . . ." *Id.* (emphasis added). Where, as here, Congress chose to circumscribe proximate causation in one element of the statute (15 U.S.C. § 7903(5)(a)(v)) but not another (the predication exception), "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).

3718268.1

C. *PLCAA's Explicit Commitment to Federalism is Expressed in the Predicate Exception's Invitation to State Legislatures to Enact Statutes that Impose Obligations and Prohibitions on the Firearms Industry*

PLCAA's commitment to the constitutional principle of federalism is explicit in its stated purpose "[t]o preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between the sister States." 15 U.S.C. § 7901(a)(8). PLCAA honors this commitment to federalism by preserving the ability of states to regulate the industry in accordance with regional variation in attitudes about gun ownership and how best to respond to firearms-related violence. Accordingly, the predicate exception allows not only federal but also state statutes to serve as predicate statutes. The plain meaning of the predicate exception's text makes clear that PLCAA preemption does not cover "an action in which a manufacturer or seller of a qualified product knowingly violated a *State* or Federal statute applicable to the sale or marketing of the product. . . ." *Id.* § 7903(5)(A)(iii) (emphasis added).

\* \* \*

The constitutional principles explicitly endorsed by PLCAA's findings and purposes section—the right to keep and bear arms, separation of powers, and federalism—all support an interpretation of the predicate exception that, in accordance with the plain meaning of its text, authorizes lawsuits against the gun industry under A1765.

25

## <u>CONCLUSION</u>

For the foregoing reasons, this court should reverse the district court's grant of a preliminary injunction.

Dated: April 7, 2023

Respectfully submitted,

FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP

s/ Timothy M. Haggerty
Timothy M. Haggerty
Alexandra Elenowitz-Hess
Rupita Chakraborty
One Gateway Center, 25th Floor
Newark, New Jersey  07102-5311
(973) 877-6400
thaggerty@fklaw.com

*Counsel for Amici Curiae*
*Legal Scholars*

# APPENDIX A: LIST OF *AMICI CURIAE*

The *amici* listed below join this brief as individuals, not as representatives of their respective universities. Institutional affiliations are provided only for purposes of identification.

**Hillel Y. Levin**
Alex W. Smith Professor of Law
*University of Georgia*

**Scott Burris**
Professor of Law
*Temple University*

**Jake D. Charles**
Associate Professor of Law
*Pepperdine University*

**William S. Dodge**
Martin Luther King, Jr. Professor of Law and John D. Ayer Chair in Business Law
*University of California, Davis*

**Daniel Greenwood**
Professor of Law
*Hofstra University*

**Linda Jellum**
Professor of Law
*University of Idaho College of Law*

**Timothy D. Lytton**
Distinguished University Professor
*Georgia State University*

**Douglas A. Kysar**
Joseph M. Field '55 Professor of Law
*Yale University*

**Michael L. Rustad**
Thomas F. Lambert, Jr. Professor of Law
*Suffolk University*

**Ani B. Satz**
Professor of Law & Public Health
*Emory University*

**Wendy E. Wagner**
Richard Dale Endowed Chair in Law
*University of Texas*

**John Fabian Witt**
Allen H. Duffy Class of 1960 Professor of Law
*Yale University*

27

## COMBINED CERTIFICATION OF BAR MEMBERSHIP, WORD COUNT, IDENTICAL COMPLIANCE, AND VIRUS CHECK

I hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

I further certify that the text of the electronic Brief filed by ECF and the text of the hard copies filed or to be filed with the Court are identical. The electronic copy of the Brief has been scanned for viruses using Vipre Virus Protection.

I further certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,005 words as calculated by the word processing program used in the preparation of this brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

s/ Timothy M. Haggerty
Timothy M. Haggerty

3718268.1

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy M. Haggerty, hereby certify that on April 7, 2023, the foregoing

was filed electronically and served on the other parties via the court's ECF system.

<div style="margin-left: 40%;">

<u>s/ Timothy M. Haggerty</u>
Timothy M. Haggerty

</div>

3718268.1