No. 23-1214

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

NATIONAL SHOOTING SPORTS FOUNDATION,

*Plaintiff- Appellee*,

*v.*

MATTHEW J. PLATKIN, Attorney General of the State of New Jersey,

*Defendant-Appellant.*

On Interlocutory Appeal from the United States District Court
for the District of New Jersey

No. 3:22-cv-06646
The Honorable Zahid N. Quraishi

**BRIEF FOR AMICI CURIAE IDAHO, ALABAMA, ALASKA, ARKANSAS, GEORGIA, INDIANA, IOWA, KANSAS, KENTUCKY, MISSISSIPPI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, WEST VIRGINIA, AND WYOMING SUPPORTING PLAINTIFF-APPELLEE AND AFFIRMANCE**

| | |
|---|---|
| RAÚL R. LABRADOR<br>*Attorney General* | THEODORE J. WOLD<br>*Solicitor General* |
| Idaho Office of the<br>Attorney General<br>700 W. Jefferson St.<br>Suite 210<br>Boise, ID 83720<br>(208) 334-2400<br>Josh.Turner@ag.idaho.gov | JOSHUA N. TURNER<br>*Deputy Solicitor General*<br>*Counsel of Record*<br><br>TIMOTHY J. LONGFIELD<br>*Deputy Attorney General* |

(*Additional counsel on signature page*)

# TABLE OF CONTENTS

INTEREST OF AMICI STATES ................................................................................ 1

SUMMARY OF ARGUMENT .................................................................................. 2

ARGUMENT ........................................................................................................ 3

I.　A1765 is an Impermissible Extraterritorial Regulation and Violates the Commerce Clause ................................................................................................. 3

II.　A1765 is the Prototypical Law Preempted by the PLCAA ........................ 8

CONCLUSION .................................................................................................... 11

CERTIFICATIONS OF COMPLIANCE .................................................................. 13

CERTIFICATE OF SERVICE ................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**

*A.S. Goldmen & Co. v. New Jersey Bureau of Sov.*,
   163 F.3d 780 (3d Cir. 1999) ................................................................. 8

*Bank of Am. Corp. v. City of Miami*,
   137 S. Ct. 1296 (2017) ....................................................................... 10

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ............................................................................. 9

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ............................................................................. 8

*Comm'r of Internal Revenue v. Clark*,
   489 U.S. 726 (1989) ........................................................................... 10

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ......................................................................... 2, 7

*Franchise Tax. Bd. of Cal. v. Hyatt*,
   139 S. Ct. 1485 (2019) ......................................................................... 3

*Healy v. Beer Ins., Inc.*,
   491 U.S. 324 (1989) ..................................................................... *passim*

*Kingdomware Techs. v. United States*,
   579 U.S. 162 (2016) ............................................................................. 9

*Marx v. General Revenue Corp.*,
   568 U.S. 371 (2013) ........................................................................... 10

*North Dakota v. Heydinger*,
   825 F.3d 912 (8th Cir. 2016) ............................................................... 7

*North Dakota v. United States*,
   495 U.S. 423 (1990) ............................................................................. 3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .................................................................................... 8

*Teixeira v. County of Alameda*,
    873 F.3d 670 (9th Cir. 2017) .................................................................. 1, 7

*TitleMax of Delaware, Inc. v. Weissman*,
    24 F.4th 230 (3d Cir. 2022) ....................................................................... 6

**Code and Statutes**

15 U.S.C. § 7901 ............................................................................................. 2, 9

15 U.S.C. § 7901(a) ............................................................................................. 1

15 U.S.C. § 7901(b)(1) ........................................................................................ 3

15 U.S.C. § 7903(5)(A) ....................................................................................... 9

15 U.S.C. § 7903(5)(A)(ii) ................................................................................ 10

15 U.S.C. § 7903(5)(A)(iii) ................................................................................. 9

15 U.S.C. § 7903(5)(A)(iv) ............................................................................... 10

15 U.S.C. § 7903(5)(A)(v) ................................................................................ 10

N.J. Stat. Ann. § 19:34-32 .................................................................................. 4

N.J. Stat. Ann. § 24:6B-12 ................................................................................. 4

N.J. Stat. Ann. §§ 2C:58-33(a) ........................................................................... 3

N.J. Stat. Ann. § 2C:58-34 ................................................................................. 4

N.J. Stat. Ann. § 2C:58-35 ............................................................................. 2, 5

N.J. Stat. Ann. § 2C:58-35(a)(1) ........................................................................ 4

N.J. Stat. Ann. § 2C:58-35(a)(2)-(3) .................................................................. 5

N.J. Stat. Ann. § 2C:58-35(b) ................................................................................ 5

N.J. Stat. Ann. § 2C:58-35(e) ............................................................................ 5, 10

**RULES**

Fed. R. App. P. 29(a)(2) ........................................................................................ 2

**INTEREST OF AMICI STATES**

The States of Idaho, Alabama, Alaska, Arkansas, Georgia, Indiana, Iowa, Kansas, Kentucky, Mississippi, Montana, Nebraska, North Dakota, Ohio, South Carolina, South Dakota, Texas, West Virginia, and Wyoming are sovereigns directly impacted by New Jersey's overreaching and unlawful anti-gun-industry statute, bill A1765. There are many reasons New Jersey's statute should be enjoined, but its extraterritorial regulation of wholly out-of-state conduct is particularly concerning to Amici States. Many of the "gun industry members" targeted by A1765 do business in Amici States.[1] And Amici States have a sovereign interest in regulating these businesses as they see fit and ensuring they are protected from extreme policy initiatives of other states.

New Jersey's national attack on gun industry members also threatens to interfere with the rights of citizens in Amici States to keep and bear arms. The Second Amendment, and Amici State analogs, won't mean much if New Jersey and its nuisance-backing cohort of states can make selling firearms a venture too risky to enter. *See* 15 U.S.C. § 7901(a). The fact is that "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense," *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017), and the obvious playbook New Jersey and other states are adopting is aimed at eroding core constitutional rights via backdoor attacks on interstate commerce.

---

[1] https://idahobusinessreview.com/2018/04/13/idahos-efforts-to-attract-firearms-ammunition-makers-have-paid-off/ (noting a 2018 "survey ranked Idaho as the state most dependent on the firearms industry" and that other states with strong gun industries include Montana, Alaska, South Dakota, and Wyoming).

That effort should fail. Accordingly, Amici States file this brief in support of Plaintiff-Appellee National Shooting Sports Foundation under Federal Rule of Appellate Procedure 29(a)(2).

## SUMMARY OF ARGUMENT

Lesson 101 in state sovereignty is that a state's police powers are confined to its territory. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 (1989); *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982). New Jersey apparently missed the memo on that basic principle of jurisdiction and comity. By enacting A1765, New Jersey purports to directly regulate wholly out-of-state activity. And neither New Jersey nor any of its pro-nuisance-state supporters deny that A1765 has exactly that consequence—it tells out-of-state firearm businesses that if they don't implement New Jersey's demands relating to the "manufacture, sale, distribution, importing, and marketing of gun-related products," they will face ruinous liability. N.J. Stat. Ann. § 2C:58-35. In fact, New Jersey isn't shy about its extraterritorial agenda. *See* Appellant Br. at 38-41.

But gun industry members in Amici States are not subject to New Jersey's policy diktats. One state may not project its "regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 337. A1765 is an affront to Amici States' sovereignty and violates the Commerce Clause. It can be enjoined on that basis alone.

Attempts like New Jersey's to chill firearm commerce nationally is also the very reason Congress passed the Protection of Lawful Commerce in Arms Act in 2005. *See* 15 U.S.C. § 7901 *et seq.* Congress thus "prohibit[ed] causes of action against

manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others." *Id.* §7901(b)(1). But here again, New Jersey isn't hiding its agenda to circumvent the PLCAA's preemptive force. For example, it complains that "federal law has created an additional barrier" to "shield[] gun industry members" from liability for "harm to the public"—even when the harm is the result of "criminal actions by third parties." *See* N.J. Stat. Ann. §§ 2C:58-33(a), -35(e). New Jersey thinks it has cleverly situated its repackaged vicarious liability statute in the PLCAA's predicate exception. But Congress didn't carve out such statutes; it targeted and preempted them. A1765 can thus be enjoined under the PLCAA as well.

## ARGUMENT

**I.    A1765 is an Impermissible Extraterritorial Regulation and Violates the Commerce Clause.**

For as long as the States have joined in Union, a principle of respect for the autonomy of their respective spheres has sealed their compact. *See Healy*, 491 U.S. at 335-36. "Each State's equal dignity and sovereignty under the Constitution implies certain constitutional limitations on the sovereignty of all of its sister States." *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1497 (2019). The law is settled on this score: States are not free to regulate matters that fall outside of their jurisdiction. *North Dakota v. United States*, 495 U.S. 423, 431 (1990). They cannot project their statutes "to commerce

that takes place wholly outside of [their] borders"—even if such "commerce has effects within the State." *Healy*, 491 U.S. at 336.

But New Jersey's extraterritorial regulation thumbs its nose at this clear-cut rule. A1765 regulates "gun industry members," regardless of location, and it tries to do so directly. The statute defines its targets as "a person engaged in the sale, manufacturing, distribution, importing or marketing of a gun-related product, and any officer, agent, employee, or other person authorized to act on behalf of that person or who acts in active concert or participation with one or more such persons." N.J. Stat. Ann. § 2C:58-34. The statute nowhere limits its demands to members "in this state" or "doing business in this state," territorial limitations with which the New Jersey legislature is well familiar. *See, e.g.*, N.J. Stat. Ann. § 24:6B-12 (confining regulations on "drug manufacturing businesses" to those that operate distribution depots or warehouses "in this State"); N.J. Stat. Ann. § 19:34-32 (limiting contribution restrictions to insurance companies "doing business in this state").

Even A1765 employs that territorial limiter, but it does so only to focus New Jersey's attorney general on public nuisances affecting New Jersey. *Id.* § 2C:58-35(a)(1). The lack of a similar limitation applicable to the targets of the statute and where their regulated conduct occurs confirms its vast sweep. Moreover, the "in this State" phrase only qualifies half of the harm the statute seeks to redress, further confirming its reach into other jurisdictions. The other half of A1765 leaves New Jersey's attorney general free to go after any gun industry member anywhere that he thinks has failed to use

4

"reasonable controls" in doing business—something the statute deems a *per se* public nuisance. *Id.* § 2C:58-35(a)(2)-(3). The law imposes no in-state requirement.

A1765's direct regulation of out-of-state businesses also could not be clearer. The statute demands that out-of-state businesses "establish, implement, and enforce reasonable controls"—whatever that means—"regarding [their] manufacture, sale, distribution, importing, and marketing of gun-related products." N.J. Stat. Ann. § 2C:58-35. It also warns out-of-state businesses not to "recklessly create, maintain, or contribute to a public nuisance in this State through the sale, manufacturing, distribution, importing, or marketing of a gun-related product." *Id.* If an out-of-state business fails on either of these fronts—like by not having a secure enough alarm system to prevent gun theft, as Illinois and the other nuisance-backing States suggest—New Jersey's attorney general can sue them and extract extraordinary damages. *Id.* § 2C:58-35(b).

The transparent effect of A1765 is to threaten firearm businesses in Amici States with crushing liability for the criminal acts of third parties. The statute ensures as much, knocking out any proximate cause protection and requiring nothing more than harm which "was a reasonably foreseeable effect" of "any intervening actions, including but not limited to criminal actions by third parties." *Id.* § 2C:58-35(e). Translation: businesses lawfully engaged in firearm commerce in other states are on the hook for criminal misuse of firearms in New Jersey.

New Jersey doesn't dispute this reading of A1765—it doubles down on it. Such extraterritorial regulation is no problem, according to New Jersey, so long as the law

5

doesn't discriminate between in-state and out-of-state conduct. *See* Appellant Br. at 39. Hogwash. First, a glance at *Healy* topples New Jersey's claim. The statute at issue in *Healy* violated the Commerce Clause in two, independent respects: its "extraterritorial effects" and its "discriminatory treatment" of companies doing business in interstate commerce. *See Healy*, 491 U.S. at 336, 341. New Jersey is wrong to cut out the first basis. And second, *TitleMax* does not say any differently. This Court there merely rejected the notion that the words "extraterritorial doctrine" can be invoked magically to avoid *Pike* balancing. *See TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230, 238 n.7 (3d Cir. 2022). The substance of the statute determines the applicable analysis, and far from rejecting the long line of extraterritorial precedents, this Court affirmed that a law like A1765 "that directly controls commerce wholly outside its borders violates the dormant Commerce Clause, regardless of whether the state legislature intended for the statute to do so." *Id.* at 238 (citing *Healy*, 491 U.S. at 336).

As shown above, A1765 is not at all like the Pennsylvania laws at issue in *TitleMax*. Those laws regulated lending and collection activity ***in Pennsylvania***. *TitleMax*, 24 F.4th at 239 ("TitleMax's transactions with Pennsylvanians involve both loans and collection, and these activities do not occur 'wholly outside' of Pennsylvania."). But A1765 by contrast squarely regulates wholly out-of-state conduct. It dictates how "gun industry members" sell, manufacture, distribute, or market gun-related products, and it doesn't care that ***that*** activity happens entirely outside of New Jersey. The law isn't even

6

limited to regulating activity that "has effects within the State," but that limitation also would not be enough to save it either. *See Edgar*, 457 U.S. at 642-43.

A1765 is much more comparable to a Minnesota law that attempted to regulate out-of-state power generation that "contributed" to carbon dioxide emissions in Minnesota. *North Dakota v. Heydinger*, 825 F.3d 912, 922 (8th Cir. 2016). The Eighth Circuit struck down Minnesota's law under *Healy*'s extraterritoriality doctrine because it attempted to regulate business that was conducted entirely outside of Minnesota: out-of-state power generators sold offending electricity in interstate commerce that could eventually make its way through the grid into Minnesota. *Id.* at 921-22 ("Like persons who post information on an out-of-state internet website, out-of-state utilities entering into purchases and sales of electricity in the MISO transmission grid cannot prevent electricity users in Minnesota from accessing the electrons." (cleaned up)). A1765 likewise attempts to regulate out-of-state firearm businesses who may make, distribute, sell, or market "gun-related products" that wind up in New Jersey. Even worse though, the gun-related products are not inherently harmful but instead require a separate unlawful act of a third party in New Jersey to cause actual harm. The carbon emissions Minnesota sought to regulate, on the other hand, were deemed to be the source of in-state harm themselves. New Jersey's law should suffer the same fate as Minnesota's.

There is an additional component that makes New Jersey's overreach particularly concerning. A1765 impacts Second Amendment rights by eroding an "ancillary right[]" necessary to exercise the fundamental right to keep and bear arms. *Teixeira v. County of*

7

*Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). And that is the regulation's very purpose, resulting from New Jersey's policy determination that "gun industry members" contribute to "the epidemic of gun violence." But Amici States do not blame firearm businesses operating lawfully in an already stiffly regulated industry for the misdeeds of criminals. A1765 cannot deny each Amici State its right to "make its own reasoned judgment about what conduct is permitted or proscribed within its borders" and to "alone . . . determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

Because New Jersey purports to "directly control[] commerce occurring wholly outside the boundaries of a State," A1765 "exceeds the inherent limits of the enacting State's authority and is invalid." *A.S. Goldmen & Co. v. New Jersey Bureau of Sec.*, 163 F.3d 780, 793-94 (3d Cir. 1999).

**II.    A1765 is the Prototypical Law Preempted by the PLCAA.**

Both the district court and NSSF capably explain that the PLCAA preempts A1765. Amici States will not repeat those arguments, and little more needs to be said. Just a few observations in closing on preemption here.

*First*, any presumption against preemption is inapplicable here. *See* Appellant Br. at 30; Ill. Br. at 16. New Jersey's extraterritorial regulation is not an exercise of "historic police powers." *Cf. Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). A state has never been able to regulate conduct beyond its own borders simply by tagging its

8

regulation with a "police power" label. *See Bigelow v. Virginia*, 421 U.S. 809, 824-25 (1975) (States "may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State."). If anything, the PLCAA's preemptive purpose targets New Jersey's extraterritorial law. A1765 creates just the type of cause of action unfairly targeting a national industry and burdening interstate commerce that Congress aimed to bury. *See generally* 15 U.S.C. § 7901.

*Second*, the PLCAA's stated purpose to prohibit causes of action against firearm businesses for harms "solely" caused by criminals does not save A1765, as New Jersey and its State comrades seem to think. *See* Appellant Br. at 4, 28; Ill. Br. at 14-18. The PLCAA's operative text prohibits a "qualified civil liability action" that threatens a firearm business with damages "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A). Congress did not use the word "solely" in defining the scope of preempted actions. As New Jersey notes in its own briefing, "prefatory clauses . . . cannot change the scope of the operative clause." Appellant Br. at 29 (quoting *Kingdomware Techs. v. United States*, 579 U.S. 162, 173 (2016)).

Even assuming a "solely" gloss should be added, New Jersey imposes liability on firearm businesses for harms "solely" resulting from the criminal acts of third parties for purposes of the PLCAA. It does so by exchanging the PLCAA's proximate cause requirement, 15 U.S.C. § 7903(5)(A)(iii), for A1765's "foreseeability" standard, N.J. Stat.

9

Ann. § 2C:58-35(e). Mere foreseeability includes remote, non-proximate causes, and so "is not sufficient to establish proximate cause." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017). A1765 can't redefine terms to escape the PLCAA's preemptive effect.

*Third*, New Jersey offers no sensible interpretation of the PLCAA. Under New Jersey's proffered interpretation, statutes that "address[] firearms sales and marketing," without anything more required, fall within the predicate exception—a simplistic and neutralizing understanding of the PLCAA. *See* Appellant Br. at 2. That's an absurd reading for at least two reasons. It renders much of the PLCAA superfluous. Three of the six PLCAA exceptions addressing civil actions based on certain common law theories would be unnecessary if the predicate exception permitted any cause of action addressing firearm sales or marketing. *See* 15 U.S.C. §§ 7903(5)(A)(ii) (negligent entrustment of negligence per se); 7903(5)(A)(iv) (breach of contract or warranty); 7903(5)(A)(v) (product defect theories). Courts avoid interpretating statutes as superfluous, especially when, as under New Jersey's view, "an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013). New Jersey's reading also leaves the PLCAA with little to no preemptive force. *Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) (reading an "exception narrowly in order to preserve the primary operation of the [statute]"). But contrary to New Jersey's unreasonably expansive view of the predicate exception, it "cannot possibly encompass *every* statute that might be 'capable of being applied' to the sale or manufacture of

firearms." *Ileto*, 565 F.3d at 1165 (Berzon, J., concurring in part and dissenting in part). Otherwise, "the exception would swallow the rule, and no civil lawsuits would ever be subject to dismissal under [the PLCAA]." *Id.*

The Court need not look much beyond the beginning words of A1765, which reveal its conflict with the PLCAA. It authorizes precisely the kind of civil action that Congress preempted. And it does so at the expense of Amici States' sovereignty and harmonious interstate comity. Preemption in this case is well supported.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Respectfully Submitted,

**RAÚL R. LABRADOR**　　　　**THEODORE J. WOLD**
Attorney General　　　　　　　Solicitor General
*State of Idaho*

Date: May 8, 2023　　　　　　　*/s/ Joshua N. Turner*
　　　　　　　　　　　　　　　Joshua N. Turner (MN 0400279)
　　　　　　　　　　　　　　　Deputy Solicitor General
　　　　　　　　　　　　　　　Timothy J. Longfield
　　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　　Idaho Attorney General's Office
　　　　　　　　　　　　　　　Statehouse, Room 210
　　　　　　　　　　　　　　　Boise, ID  83720

STEVE MARSHALL
Attorney General
*State of Alabama*

TREG TAYLOR
Attorney General
*State of Alaska*

TIM GRIFFIN
Attorney General
*State of Arkansas*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

BRENNA BIRD
Attorney General
*State of Iowa*

KRIS W. KOBACH
Attorney General
*State of Kansas*

DANIEL CAMERON
Attorney General
*Commonwealth of Kentucky*

LYNN FITCH
Attorney General
*State of Mississippi*

AUSTEN KNUDSEN
Attorney General
*State of Montana*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

DAVE YOST
Attorney General
*State of Ohio*

ALAN WILSON
Attorney General
*State of South Carolina*

MARTY J. JACKLEY
Attorney General
*State of South Dakota*

KEN PAXTON
Attorney General
*State of Texas*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

BRIDGET HILL
Attorney General
*State of Wyoming*

## CERTIFICATIONS OF COMPLIANCE

The undersigned hereby certifies that:

(i)     Pursuant to Loc. App. R. 46.1, I have applied for admission to the Bar of the United States Court of Appeals for the Third Circuit, with appropriate sponsorship and payment;

(ii)    Pursuant to Fed. R. App. P. 32(a), this brief complies with the type-volume requirements and limitations because it contains 2,698 words in 14-point Garamond font;

(iii)   Pursuant to Loc. App. R. 31.0(c), the text of the electronic brief is identical to the text in the paper copies; and

(iv)    Pursuant to Loc. App. R. 31.0(c), a virus detection program has been run on the file and no virus was detected.

*/s/ Joshua N. Turner*
Joshua N. Turner

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Joshua N. Turner*
Joshua N. Turner
