**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 23-1214

NATIONAL SHOOTING SPORTS FOUNDATION,
*Plaintiff-Appellee,*

v.

ATTORNEY GENERAL OF NEW JERSEY,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (No. 3:22-cv-06646-ZNQ)

**REPLY BRIEF OF APPELLANT**

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
*Solicitor General*

MICHAEL L. ZUCKERMAN
*Deputy Solicitor General*

SARA M. GREGORY
*Assistant Attorney General*

TIM SHEEHAN
AMANDA I. MOREJÓN
CHANDINI JHA
JUSTINE M. LONGA
PHOENIX N. MEYERS
SAMUEL L. RUBINSTEIN
*Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(609) 789-8684
michael.zuckerman@njoag.gov

*Attorneys for Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION ....................................................................1

ARGUMENT ...........................................................................3

   I.  NSSF Has Not Established An Article III Case-Or-Controversy. .................3

   II.  PLCAA Does Not Preempt Section 58-35. .......................................7

      A. PLCAA Does Not Confer A Private Right Of Action. .............................7

      B. NSSF's Claim Fails On The Merits. .......................................10

      C. NSSF Is Not Entitled To A Facial Injunction. ........................................19

   III. NSSF's Unreached Claims Fall Short. ............................................21

      A. Dormant Commerce Clause. .................................................21

      B. First Amendment. ...................................................23

      C. Vagueness. ..........................................................24

      D. Second Amendment...................................................25

   IV. NSSF Failed To Show Irreparable Harm. .....................................26

CONCLUSION .....................................................................27

CERTIFICATE OF COMPLIANCE.......................................................29

CERTIFICATE OF SERVICE ...........................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
138 S. Ct. 2305 (2018) ................................................................27

*In re Academy*,
625 S.W.3d 19 (Tex. 2021) .............................................................8

*Adams v. Freedom Forge Corp.*,
204 F.3d 475 (3d Cir. 2000) ...........................................................27

*Al Shimari v. CACI Int'l, Inc.*,
679 F.3d 205 (4th Cir. 2012) ...........................................................6

*Ass'n of N.J. Rifle & Pistol Clubs v. Port Auth. of N.Y. & N.J.*
(*ANJRPC*),
730 F.3d 252 (3d Cir. 2013) ........................................................8, 9

*Bank of Am. Corp. v. City of Miami*,
581 U.S. 189 (2017) .....................................................................18

*Bank of Hope v. Chon*,
938 F.3d 389 (3d Cir. 2019) ...........................................................23

*Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) .......................................................9, 10

*Borden v. United States*,
141 S. Ct. 1817 (2021) ..................................................................17

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) .....................................................................24

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) .......................................................18, 19

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ..................................................................22, 23

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
   142 S. Ct. 1464 (2022)......................................................................23

*City of N.Y. v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008) ...........................................8, 11, 12, 13

*City of Rancho Palos Verdes v. Abrams*,
   544 U.S. 113 (2005)....................................................................8, 9

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)..................................................................25, 26

*Egbert v. Boule*,
   142 S. Ct. 1793 (2022)...................................................................10

*Farina v. Nokia*,
   625 F.3d 97 (3d Cir. 2010) .............................................................16

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)..................................................................2, 8, 9

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
   949 F.3d 116 (3d Cir. 2020) .......................................................23, 24

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989)......................................................................21

*Ileto v. Glock*,
   565 F.3d 1126 (9th Cir. 2009) ..............................................8, 11, 13

*Jam v. International Finance Corp.*,
   139 S. Ct. 759 (2019)....................................................................18

*Kingdomware Techs. v. United States*,
   579 U.S. 162 (2016).....................................................................14

*Lizardo v. United States*,
   619 F.3d 273 (3d Cir. 2010) .............................................................9

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001).....................................................................23

*Lupian v. Joseph Cory Holdings LLC*,
   905 F.3d 127 (3d Cir. 2018) ................................................................16

*McFadden v. United States*,
   576 U.S. 186 (2012).............................................................................18

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996).............................................................................15

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)..........................................................................6, 27

*N.J. Banker's Ass'n v. Att'y Gen. N.J.*,
   49 F.4th 849 (3d Cir. 2022) ...................................................................3

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022)....................................................................25, 26

*National Pork Producers Council v. Ross*,
   No. 21-468, 2023 WL 3356528 (May 11, 2023)........................21, 22

*Oncale v. Sundowner Offshore Servs.*,
   523 U.S. 75 (1998)...............................................................................13

*Pena v. Lindley*,
   898 F.3d 969 (9th Cir. 2018) ...............................................................26

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970).............................................................................22

*Ransom v. FIA Card Servs., N.A.*,
   562 U.S. 61 (2011)...............................................................................10

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ................................................................26

*Sherwin-Williams Co. v. County of Delaware*,
   968 F.3d 264 (3d Cir. 2020) .........................................................*passim*

*State v. Campfield*,
   61 A.3d 1258 (N.J. 2013) ....................................................................17

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)......................................................................3

*Teixeira v. Cnty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) ......................................................26

*United States v. Arthrex, Inc.,*
    141 S. Ct. 1970 (2021)................................................................19

*United States v. Marcavage,*
    609 F.3d 264 (3d Cir. 2010) ......................................................19

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 433 (2015)....................................................................24

*Woods v. Steadman's Hardware, Inc.,*
    No. 12-33, 2013 WL 709110 (D. Mont. Feb. 26, 2013) .................7

## Statutes

15 U.S.C. § 7901(a)(5)...................................................................6

15 U.S.C. § 7901(a)(6)...............................................................6, 15

15 U.S.C. § 7901(a)(7)...................................................................15

15 U.S.C. § 7901(b)(1)..............................................................14, 15

15 U.S.C. § 7902(a) ...................................................................7, 16

15 U.S.C. § 7903(2) .......................................................................16

15 U.S.C. § 7903(5)(A)................................................6, 7, 15, 16, 20

15 U.S.C. § 7903(5)(A)(iii)...............................................7, 10, 11, 15

15 U.S.C. § 7903(5)(A)(iii)(I)..........................................................12

15 U.S.C. § 7903(5)(A)(iii)(II) ..............................................12, 13, 17

15 U.S.C. § 7903(5)(C)...................................................................2, 7

15 U.S.C. § 7903(6) ...................................................................6, 16

18 U.S.C. § 922(d) .........................................................................21

28 U.S.C. § 1604 ........................................................................6, 9

N.J. Stat. Ann. § 2C:2-2(b)(3) .................................................17

N.J. Stat. Ann. § 2C:2-2(c)(3) .................................................17

N.J. Stat. Ann. § 2C:25-27 .......................................................19

N.J. Stat. Ann. § 2C:39-9(k) ....................................................21

N.J. Stat. Ann. § 2C:58-33 .........................................................1

N.J. Stat. Ann. § 2C:58-35(a)(1) ..............................................21

N.J. Stat. Ann. § 2C:58-35(c) ...................................................18

**Other Authorities**

Dobbs' Law of Torts § 32 (2d ed. 2022) ..................................12

Model Penal Code § 2.02(2)(c) (1985) .....................................17

R.F.V. Heuston, *Salmond on the Law of Torts* (17th ed. 1977) ..............................17

Restatement (Second) of Torts §§ 440-42 (1965) ....................18

## <u>INTRODUCTION</u>

NSSF's broadside, pre-enforcement challenge to N.J. Stat. Ann. §§ 2C:58-33 to -35 (Section 58-35) relies on a series of abstractions—unmoored from the text of PLCAA, the terms of New Jersey's law, and the record below.

The core error below—which NSSF repeats on appeal—is NSSF's preemption theory, which cannot be squared with PLCAA's plain text. PLCAA's exceptions permit a range of actions under Section 58-35, including (but not limited to) actions within its "predicate exception." While NSSF claims that a predicate statute is "applicable to the sale or marketing" of a firearm only when it is "concrete," NSSF cannot cite any dictionary, example of ordinary use, or prior opinion (majority, concurrence, or dissent) in support. Instead, like the district court, NSSF invokes abstract notions of purpose. But courts are governed by Congress's language, not its inchoate intentions—especially in preemption cases.

In any event, there is no conflict between Section 58-35 and the purposive sources NSSF cites. The parties *agree* the predicate exception does not permit States to hold PLCAA-protected entities vicariously liable for harms they did not proximately cause through knowing violations, and Section 58-35 respects that line. Section 58-35 kicks in only when there is culpable misconduct by an industry member, unlawful or tortious. It requires a knowing violation the way the predicate exception does. And it requires proximate cause the way tort law generally does.

That said, this Court should not even reach that core error, because this suit does not belong in federal court, for two reasons. *First*, there is a patent lack of Article III jurisdiction. To bring a pre-enforcement suit, a plaintiff must identify specific conduct in which it wishes to engage and a substantial threat of future enforcement. But NSSF does not posit any conduct beyond selling guns—which does not violate Section 58-35—and merely speculates its members may face enforcement suits based on undefined sales and marketing practices. This preemptive strike on a hypothetical future suit—the contours of which remain unknown—runs headlong into *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020). *Second*, NSSF lacks a private right of action. PLCAA disclaims a "private cause of action or remedy," 15 U.S.C. § 7903(5)(C), and is instead a defense to "actions" that have been "brought," *id.* § 7902(a). While Section 1983 allows a private party to enforce a right another statute "unambiguously conferred," *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002), it is not a tool to initiate a private suit that Congress specifically foreswore.

Finally, even if this Court agrees with NSSF—notwithstanding the plain text of PLCAA, the terms of Section 58-35, and the actual record (or lack thereof)—the injunction below still goes too far. Indeed, NSSF now acknowledges that the district court's reasoning cannot support the breadth of its facial injunction. That should be enough to reject the facial injunction outright—and at least to narrow any

2

injunction's terms. Nor can NSSF's unreached constitutional claims justify an injunction, as each is inconsistent with a wall of precedent—including its dormant Commerce Clause theory, which the Supreme Court just unanimously rejected.

## ARGUMENT

### I.    NSSF Has Not Established An Article III Case-Or-Controversy.

NSSF's theory of standing is extraordinary. In a traditional pre-enforcement suit, the challenger must establish the specific conduct in which it wishes to engage, show the conduct is "arguably proscribed" by the challenged statute, and prove "a substantial threat of future enforcement"—otherwise, the theory is insufficiently concrete and imminent to satisfy Article III. *See N.J. Banker's Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855-56 (3d Cir. 2022) (cleaned up). *N.J. Bankers* and *Susan B. Anthony List v. Driehaus* (*SBA*), 573 U.S. 149 (2014), are illustrative. In *N.J. Bankers*, the plaintiff-association proved a desire to make contributions to political candidates and cited a state law that arguably foreclosed such contributions—which the State agreed would justify enforcement. 49 F.4th at 856. Likewise, in *SBA*, the challenger identified specific statements it wished to make that were plausibly proscribed—and showed a risk of enforcement based on a state commission having already found probable cause to believe one of the statements violated the statute. 573 U.S. at 151-52, 156, 161-62, 164. Neither challenger had to "plead its members

into liability," NSSF Br.21, but both had to (and did) establish specific conduct they wished to undertake but for a credible threat of enforcement.

NSSF does neither. The entirety of NSSF's standing theory is that its members make and sell guns and that the State will eventually file lawsuits under Section 58-35 against *some* industry members for some conduct. Br.20. In other words, NSSF is not pressing any arguably proscribed conduct, nor any credible threat of future enforcement. Rather, it attempts to forestall a broad range of future lawsuits (against defendants it *assumes* will be its members, Br.17), so long as the future suits rely on particular theories with which NSSF disagrees. That is precisely the maneuver this Court rejected in *Sherwin-Williams*.

*Sherwin-Williams* is remarkably on point. *Sherwin-Williams* unfolded against the backdrop of public-nuisance suits two counties filed against the paint company. 968 F.3d at 267. The company preemptively sued a third county, which it alleged had hired (or was hiring) outside counsel to file essentially "identical litigation." *Id.* Sherwin-Williams alleged—like NSSF does—that the anticipated suit would violate its First Amendment and due process rights. *Id.* This Court rejected that suit on standing and ripeness grounds, explaining that Sherwin-Williams assumed "not only that the County will sue, but also its theory of liability, its litigation tactics, and that the County will prevail." *Id.* at 270. That "uncertainty—and all of the contingencies

4

that go along with it—expose[d] Sherwin-Williams's inability to allege an existing injury or one that is 'certainly impending.'" *Id.*

NSSF fails to distinguish *Sherwin-Williams*. NSSF primarily argues the likelihood of enforcement is greater here, relying on the State's intention to enforce Section 58-35 at some point, having an office tasked with enforcement, and having sought a stay. Br.17-18. Initially, it is not obvious how any of this makes enforcement more likely than it was that Delaware County would sue Sherwin-Williams with its outside counsel. *Sherwin-Williams*, 968 F.3d at 267. More fundamentally, NSSF misses the point. The State has always made clear it intends to file suits based on specific misconduct when uncovered. But NSSF has identified *no* current or intended conduct besides that its members sell guns, which obviously does not violate the statute, let alone establish a substantial enforcement threat. Even more than in *Sherwin-Williams*, it is unknowable here who may be sued, for what, and on what "theory of liability"—all questions that make this lawsuit "unfit for judicial resolution." 968 F.3d at 270, 272.[1]

---

[1] Indeed, the State need not "disavow" a desire to file enforcement suits in the future, NSSF Br.17, just as this Court did not require Delaware County to deny that it was actually "poised to file" "identical litigation" against Sherwin-Williams with outside counsel, 968 F.3d at 266-67.

Nor does NSSF's immunity theory, on which the district court never relied, get NSSF further. NSSF primarily argues PLCAA grants it an "immunity," Br.18, but even if that were correct,[2] it is irrelevant for two reasons. First, the problem in *Sherwin-Williams* was not the type of defense the company expected to assert, but that *no* sufficiently concrete dispute was in the offing. *See* 968 F.3d at 270. Here too, whether or not PLCAA is an immunity, any future PLCAA-related arguments will turn on the precise allegations brought against whatever defendants the State sues, some of whom may not even be PLCAA-protected. NSSF's speculation about what those suits *might* look like is insufficient under Article III, and nothing about PLCAA changes that.

Second, NSSF misunderstands immunities. Even *if* PLCAA supplied an immunity, it would protect defendants from the burdens of *discovery and trial*—not from merely being served with a complaint. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985). The State, for example, enjoys sovereign immunity, but that immunity is not violated whenever a court *grants* a motion to dismiss a damages claim simply because the State had to file the motion. Similarly, if PLCAA *is* an

---

[2] Congress did not call PLCAA an "immunity," *compare, e.g.*, 28 U.S.C. § 1604 (foreign states "shall be immune," subject to exceptions), and it is better thought of as a defense. PLCAA focuses on foreclosing specific theories of liability, which can entail different levels of analysis in different cases. *See* 15 U.S.C. §§ 7901(a)(5)-(6), 7903(5)(A); *see also Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 218 (4th Cir. 2012) (en banc) (discussing why "preemption" and "immunity" are distinct).

immunity, the solution is simple: file a motion to dismiss. It is thus unclear how NSSF believes its situation is meaningfully distinct from Sherwin-Williams's.

To be sure, Article III does not require NSSF to "sit and wait for" future suits, NSSF Br.19, and NSSF may wish to amend its complaint to plead specific conduct its members wish to undertake—showing, of course, that the conduct is arguably proscribed and a credible threat of enforcement. But while NSSF relies solely on its members' practice of selling guns, this lawsuit is hopelessly premature.

## II. PLCAA Does Not Preempt Section 58-35.

### A.    PLCAA Does Not Confer A Private Right Of Action.

NSSF's suit fails for a second threshold reason: it has no private right to sue under Section 1983. PLCAA says explicitly that "no provision … shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C). And PLCAA's text and structure confirm that it confers a defense to specific types of "actions" that have been "brought"—not an unambiguous right to affirmatively challenge state statutes. *See* NJ Br.19-20.

NSSF fails to grapple with the core defects in its claim. NSSF ignores that PLCAA expressly *disavows* any private right of action. 15 U.S.C. § 7903(5)(C); *see also Woods v. Steadman's Hardware, Inc.*, No. 12-33, 2013 WL 709110, at *3 (D. Mont. Feb. 26, 2013) (making this observation). NSSF posits no explanation for why PLCAA speaks in terms of "actions" that may not be "brought." *Id.* §§ 7902(a),

7903(5)(A). NSSF makes no response to PLCAA's text and structure, which requires evaluating a particular *pleading* rather than a statute. *Id.* § 7903(5)(A)(iii); NJ Br.19-20. And while NSSF claims a "decade of precedent holding that the PLCAA confers an affirmative right," Br.23, it exclusively cites cases in which PLCAA was raised as a *defense. See In re Academy*, 625 S.W.3d 19, 24 (Tex. 2021); *Ileto v. Glock*, 565 F.3d 1126, 1130-31 (9th Cir. 2009); *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 389 (2d Cir. 2008).

NSSF emphasizes that this suit was filed under Section 1983 rather than PLCAA, but NSSF misunderstands the doctrine in multiple respects. In evaluating whether Section 1983 allows enforcement of another *statute*, courts ask what enforcement Congress intended when enacting that other law, and whether there is "an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga Univ.*, 536 U.S. at 283; *see City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (reviewing text of statute to evaluate if Congress "intend[ed]" enforcement under Section 1983, and holding "the existence of a more restrictive private remedy for statutory violations" means no "action would lie under § 1983"); *Ass'n of N.J. Rifle & Pistol Clubs v. Port Auth. of N.Y. & N.J.* (*ANJRPC*), 730 F.3d 252, 262 (3d Cir. 2013) (Jordan, J., concurring) (agreeing a statute whose protections are "framed only as a legal defense" would not confer "a new federal cause of action" under Section 1983). That is likely why NSSF cites no precedent,

in any court, that allows a Section 1983 suit to enforce a federal statute that expressly foreswears a private right.

NSSF's other Section 1983 arguments fare no better. Although NSSF protests that many private-right cases arose in the Spending Clause context, Br.24, both the Supreme Court and this Court's recent private-rights decisions rightly applied *Gonzaga* to non-Spending Clause laws. *See Rancho Palos Verdes*, 544 U.S. at 116-19; *ANJRPC*, 730 F.3d at 253. And while NSSF again argues that PLCAA confers immunity, that is irrelevant here too: immunity or not, PLCAA's text does not "unambiguously" confer a private right, especially because it expressly *disclaims* doing so. It is hard to imagine, for example, a country claiming that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, grants *it* a private right to challenge a statute under Section 1983—and even harder if the FSIA explicitly disavowed a private right. NSSF's immunity argument goes nowhere.

Nor does NSSF's retreat to forfeiture have purchase. This Court regularly excuses forfeiture by governments *and* private litigants after evaluating the usual considerations. *Compare Lizardo v. United States*, 619 F.3d 273, 278-80 (3d Cir. 2010) (excusing government forfeiture), *with* NSSF Br.22 (seeking heightened burden for excusing government forfeiture). Rather than announce any special rule regarding forfeited arguments by public entities, this Court can simply recognize that all the traditional considerations point the same way here: the argument (1) concerns

9

the facial validity of a statute, *see Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017); (2) involves a "pure question of law," and thus no prejudice, *id.*; (3) arises at the preliminary-injunction stage, which assesses litigants' *ultimate* likelihood of success; and (4) goes to a threshold issue implicating core separation-of-powers concerns, *see Egbert v. Boule*, 142 S. Ct. 1793, 1802-03 (2022). NSSF never contests that each is present, and together, they are overwhelming. If it reaches the merits at all, this Court should reach this issue and confirm that Congress fashioned PLCAA as a shield, not a sword.

B.    NSSF's Claim Fails On The Merits.

NSSF's claim that a statute is "applicable to" firearm sales and marketing, 15 U.S.C. § 7903(5)(A)(iii), only if it imposes "sufficiently concrete" obligations, Br.27, is inconsistent with PLCAA's text. Nor do NSSF's fallback claims regarding the predicate exception's mental-state and proximate-cause elements succeed.

i.    NSSF Misconstrues "Applicable To."

**1.** While NSSF contends that a state statute is not "applicable to" the sale and marketing of firearms unless it is "concrete," its lack of textual evidence is striking. The State's brief cited dictionaries, examples of ordinary use, and prior opinions consistently interpreting "applicable" to mean "capable of being applied" or "relevant to." NJ Br.23-24; *see also, e.g.*, *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011). NSSF nowhere suggests this evidence is faulty, and it cites no contrary

definitions or examples indicating that "applicable" *ever* means "concrete"—let alone that this is the only plausible interpretation, as required by the presumption against preemption (which it also does not contest). Indeed, NSSF tacitly acknowledges that the opinion below was the first (majority, concurrence, or dissent) to read the predicate exception the way it urges. *See* NJ Br.24-25.

NSSF's only response—to claim that the decision below is "only the second" time a court reviewed a PLCAA challenge to a similar statute, and thus that there was no reason for any court to adopt NSSF's reading, Br.30—is misguided. Indeed, NSSF itself cites prior cases involving generalized tort statutes, which were in multiple ways *less* concrete than Section 58-35. *See, e.g.*, *Ileto*, 565 F.3d at 1132-33 (general tort statutes); *Beretta*, 524 F.3d at 390 n.1, 399 (general criminal nuisance statute). Yet those cases held that laws that "expressly regulate firearms" (as Section 58-35 does) *are* "applicable" under PLCAA, without any kind of "concreteness" proviso. *Beretta*, 524 F.3d at 404; *see Ileto*, 565 F.3d at 1136. And while these opinions did not consider NSSF's specific applicable-means-concrete argument, that cannot explain NSSF's lack of evidence from dictionaries, ordinary use, or opinions construing *any* statutes.

**2.** Nor can structure rescue NSSF's atextual theory. Neither the predicate exception's use of "knowingly" nor its two enumerated examples engraft a "concreteness" test into the exception's use of "applicable."

11

As to *mens rea*, NSSF notes that the predicate exception allows actions in which a defendant "knowingly violated" a state statute, 15 U.S.C. § 7903(5)(A)(iii), then mistakenly concludes that only "sufficiently concrete" duties can be knowingly violated. Br.27. Its error is plain: NSSF cites no authority, and as the State has explained (and amici scholars confirm), laws regularly impose liability for knowingly violating general standards of care, including reasonableness. *See* NJ Br.25-26 (listing examples); Scholars Br.10 (same); *see also, e.g.*, Dobbs' Law of Torts § 32 (2d ed. 2022). NSSF offers no response.

As to the predicate exception's two examples, 15 U.S.C. § 7903(5)(A)(iii)(I)-(II), NSSF's argument that the exception is limited to the examples' "commonalities," and that what the examples share is the imposition of "a concrete obligation or prohibition," Br.28, is flawed in both its premise and conclusion. As to the premise, PLCAA is clear that the predicate exception merely "*includes*" these examples, which means it is not *limited* by them. Although NSSF cites one contrary Second Circuit opinion, Br.28, NSSF ignores the precedents from this Court and the Supreme Court making this (grammatically sensible) point. *See* NJ Br.27-28 (citing, *inter alia*, *CSX Transp. v. Ala. Dep't of Revenue*, 562 U.S. 277, 295 (2011); *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 298 (3d Cir. 2004)).

Regardless, even if NSSF's premise were right, more plausible commonalities exist. The decision NSSF relies on found the two examples' commonality to be their

express tie to firearms, *not* concreteness. *Beretta*, 524 F.3d at 402 (relying on examples to construe "applicable" "to mean statutes that clearly can be said to regulate the firearms industry"); *see also Ileto*, 565 F.3d at 1134-36 (similar). Both examples also center on an industry actor's own misconduct, rather than third-party actions. *See* NJ Br.27-28. In any event, it is unclear how the predicate exception's examples are *themselves* concrete; one relies on what a seller had "reasonable cause to believe." 15 U.S.C. § 7903(5)(A)(iii)(II). None of this justifies reading "applicable" to mean "concrete."

NSSF's claim that *Beretta* and *Ileto* support its theory because they rejected "the closely related argument that the PLCAA can be evaded by pointing to a *general* public-nuisance statute," Br.30, is therefore misleading. *Beretta* interpreted "applicable" to mean laws that "clearly can be said to regulate the firearms industry," 524 F.3d at 402, and *Ileto* interpreted that text to mean laws exclusively governing such sales, 565 F.3d at 1134-36. That excludes general tort laws, but not Section 58-35. None of the cases NSSF cites remotely support its "concreteness" theory.

**3.** With no support from text, structure, or precedent, NSSF largely presses purposive arguments unmoored from PLCAA's operative text. Br.26, 29-32. As a threshold matter, NSSF's approach is inconsistent with hornbook statutory interpretation—which turns on the operative text Congress enacted, not inchoate notions of purpose. *See, e.g.*, *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79

(1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."). NSSF's only response is that these are purposes laid out in statutory prefatory clauses, but NSSF overlooks that such "prefatory clauses … cannot change the scope of the operative clause." *Kingdomware Techs. v. United States*, 579 U.S. 162, 173 (2016) (citation omitted).

More fundamentally, there is no conflict between PLCAA's goals and Section 58-35. All agree that Congress sought to bar liability "for the harm *solely caused by* the criminal or unlawful misuse of firearm products … by others." 15 U.S.C. § 7901(b)(1) (emphasis added) (cited at NSSF Br.31). But NSSF misreads Section 58-35 as a vicarious-liability statute, when it instead targets the actor's *own* misconduct—which PLCAA's sponsors expected States would continue to do. *See* NJ Br.30. To the degree NSSF speculates that the State will not adhere to the law's definition of "misconduct," Br.32, that simply highlights the speculative, groundless nature of this pre-enforcement suit.[3]

NSSF also overlooks that Section 58-35, as a statute, *fits* with Congress's purpose to bar lawsuits that "expand civil liability in a manner never contemplated

---

[3] NSSF oddly contends that a defendant can engage in "misconduct" only when it does something independently "unlawful," not when it does something *unreasonable*. Br.32. But civil reasonableness standards are commonplace, and tortious conduct is susceptible to liability regardless of whether it violates a *separate* statute. No one would say that a defendant who knowingly engaged in tortious behavior committed *no misconduct*, even if its torts did not violate a statute.

by … the legislatures of the several States," 15 U.S.C. § 7901(a)(7) (cited at NSSF

Br.31)—the core difference between a statutory cause of action and a common-law

theory. And PLCAA's concern with overreach via common-law theories, absent the

democratic accountability of the legislative process, is reflected right in the predicate

exception, which expressly allows suits for violations of "a State or Federal statute."

*Id.* § 7903(5)(A)(iii). Far from foreclosing state legislative action, PLCAA sought to

*protect* state legislatures' "exclusive authority over the creation of legal duties" in

this context. Scholars Br.24.

NSSF's absurd-results argument, Br.27, fails for similar reasons. NSSF

speculates that the plain-text reading of PLCAA's predicate exception would

"swallow the statute," *id.*, but that is wrong. The parties agree that the exception does

not allow gun sellers to be held vicariously liable for harms they did not proximately

cause through knowing violations. *E.g.*, 15 U.S.C. §§ 7901(a)(6), (b)(1),

7903(5)(A); NJ Br.29-33. Section 58-35 respects those lines. If NSSF believes

PLCAA would be better with a "concreteness" limit, it can lobby Congress for one.

**4.** With no strong arguments on text, structure, purpose, or precedent, NSSF

flips the burden: it demands clarity that Congress *approved* of laws like Section 58-

35 with "the plainest of text." Br.26. But the fact that Congress "said not a word

about saving novel expansions of the common law that have the imprimatur of the

state legislature," Br.31, is, "in our federal system," a point *in favor of* Section 58-

35, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). That is doubly so given the presumption against preemption, on which NSSF stands silent, but which confirms that state laws are not preempted unless that was Congress's "clear and manifest purpose." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 (3d Cir. 2018). In other words, *NSSF* must thus prove its applicable-means-concrete reading is the only plausible one. *See Farina v. Nokia*, 625 F.3d 97, 118 (3d Cir. 2010). Having failed to prove its reading is plausible at all, NSSF certainly cannot clear that bar.

ii.    *NSSF Misconstrues Mens Rea And Causation.*

**1.** As a fallback, NSSF erroneously argues that Section 58-35 is preempted to the extent its text does not require knowing violations or proximate cause. To start, these arguments provide no basis to preempt the *statute*. PLCAA preempts "actions," not statutes, *see* NJ Br.19-20; *supra* at 7, and thus requires courts to review pleadings to determine whether those "actions" fit the relevant exception. 15 U.S.C. §§ 7902(a), 7903(5)(A). It could not be otherwise, as some entities are not protected by PLCAA at all, 15 U.S.C. § 7903(2), (6)—and only the predicate exception includes these exact requirements. Indeed, this argument underscores the speculativeness of NSSF's suit: not only does it presume that any actions the State brings will be against PLCAA-protected NSSF members *and* rely on the predicate exception, but it *also* assumes the State will not allege knowledge and causation in

in a way that comports with even NSSF's construction of the predicate exception. *See, e.g.*, *Sherwin-Williams*, 968 F.3d at 270, 272.

In any event, Section 58-35 *does* require knowing violations. As the State has consistently explained, NJ Br.31-32; JA136, provisions within Title 2C (such as Section 58-35) that are silent as to *mens rea* default to "knowledge" by law. N.J. Stat. Ann. § 2C:2-2(c)(3). Consequently, Section 58-35 does what the predicate exception does: it requires knowledge (by law) as to the core act, but not as to all elements. *See* NJ Br.31-32; *accord* 15 U.S.C. § 7903(5)(A)(iii)(II) ("having reasonable cause to believe[] that the actual buyer" is a prohibited possessor).

NSSF wrongly resists this parallelism by arguing that 15 U.S.C. § 7903(5)(A)(iii)(II)'s "reasonable cause to believe" standard is somehow the same as "knowledge," claiming both require "actual knowledge of information"— supposedly in contrast, meanwhile, to recklessness. Br.34-35. But *knowledge* and *reasonable cause* are different mental states, and recklessness itself requires "actual knowledge of information," Br.34, under at least most American law (and certainly New Jersey's). *See, e.g.*, *Borden v. United States*, 141 S. Ct. 1817, 1824 (2021) (quoting Model Penal Code § 2.02(2)(c) in explaining that recklessness entails "consciously disregard[ing] a substantial and unjustifiable risk"); *State v. Campfield*, 61 A.3d 1258, 1266 (N.J. 2013) (same); N.J. Stat. Ann. § 2C:2-2(b)(3). Swimming upstream, NSSF cites only R.F.V. Heuston, *Salmond on the Law of Torts* 194 (17th

ed. 1977)—but that is a British-law treatise, and NSSF fails to even acknowledge these well-established domestic (and local) authorities. Further, while NSSF argues its members act "knowingly" only if they know they are violating a law, Br.34, it is *conduct*—not *illegality*—that must be knowing. *See, e.g.*, *McFadden v. United States*, 576 U.S. 186, 192 (2012) ("ignorance of the law is typically no defense").[4]

**2.** As for proximate cause, the parties agree again that the predicate exception does not permit actions tied to harms not proximately caused by the defendant. But NSSF overlooks that proximate cause has no monolithic "well-settled meaning." *Compare Jam v. International Finance Corp.*, 139 S. Ct. 759, 770 (2019) (cited at Br.36) (presumption where settled meaning *does* exist).[5] Moreover, NSSF misses that Section 58-35's proximate-cause provision codifies a common principle: that reasonably foreseeable intervening causes—as distinct from *superseding* causes—do not cut off causation. *See, e.g.*, NJ Br.33; Restatement (Second) of Torts §§ 440-42 (1965). NSSF has no answer to this blackletter principle (or to variation among States in their precise definitions). And while it cites *Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536 (3d Cir. 2001), that case

---

[4] Muddying things further, NSSF (Br. 33) cites N.J. Stat. Ann. § 2C:58-35(c) for the erroneous proposition that "intent" has no "role" in Section 58-35. Yet that provision simply states that "purpose"—a *higher* scienter—"shall not be required." *Id.*

[5] Instead, it relies on one snippet from a case discussing proximate cause "[i]n the context of the [Fair Housing Act]" and emphasizing the particular nature of the housing market. *See Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 202 (2017).

itself recognized that the existence of *some* intervening action does not automatically cut off causation. What is crucial, rather, is a "tangible showing that the defendants were a direct link in the causal chain," *id.* at 541 (cleaned up)—which can be true so long as there is no *superseding* cause. In short, making clear that reasonably foreseeable intervening acts do not themselves defeat proximate cause is unremarkable.[6]

C.    NSSF Is Not Entitled To A Facial Injunction.

NSSF no longer defends the district court's facial injunction, recognizing that many applications of Section 58-35 survive even its view of PLCAA. *See* Br.25-26 n.4. That said, NSSF's quarrel with this Court's stay order highlights the problems undergirding its entire suit, which increasingly resembles an invitation for this Court "to serve as a council of revision," "free to amend" whatever features of the law NSSF finds fault with. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1991 (2021) (Gorsuch, J., concurring in part and dissenting in part).

While NSSF now claims to be seeking as-applied relief, Br.25, it does not present a colorable as-applied claim. An as-applied claim challenges the law's "application to a particular person" (or group) "under particular circumstances." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Yet despite NSSF's

---

[6] NSSF suggests Section 58-35's use of "deem" indicates foul play. Br.35. But "deem" is simply a statutory synonym for "is." *E.g.*, N.J. Stat. Ann. § 2C:25-27 (permit "deemed immediately revoked" after domestic-violence conviction).

argument that Section 58-35 "cannot lawfully be applied to hold NSSF or its members liable for specifically identified conduct," Br.25, NSSF still provides no "specifically identified conduct" to analyze. *See supra* at 3-5. NSSF may seek as-applied relief on remand. Until then, it has no claim to such relief.

In any event, even if this Court narrows (rather than vacates) the injunction, it should reject NSSF's objection to its stay order. NSSF "oppose[s]" paragraph (c) of this Court's stay order, which narrowed the injunction to authorize lawsuits "not predicated on harm 'resulting from the criminal or unlawful misuse of a qualified product by the person or a third party' within the meaning of 15 U.S.C. § 7903(5)(A).'" Br.25-26 n.4 (quoting Dkt.16 ¶ c). NSSF's opposition is mystifying, because this Court quoted PLCAA verbatim. NSSF insists this Court attach another limit to PLCAA—specifically, that this part of PLCAA applies "only [to] cases in which an industry member's conduct is independently unlawful." *Id.* But once again, NSSF offers no textual support. If there is debate over the meaning of this separate PLCAA provision, that is fodder for a real-world suit—not for a footnote lacking a single legal authority.

NSSF nowhere opposes the State's requested modifications. *See* NJ Br.37 (noting (1) that, if injunction covers only NSSF members, the State would need to know who those members are without having to give NSSF insider-access to its investigations, and (2) given that the predicate exception's examples are non-

exhaustive, any injunction must at least permit whatever they have in common). Further, NSSF has now clarified that its objections to Section 58-35 stem only from the statute's "reasonableness" provisions. *See, e.g.*, Br.1-2, 4, 20-21, 29, 32. While Section 58-35 does have two such provisions (which cover conduct that is tortious but not "unlawful"), it *also* allows for liability for conduct that is "unlawful in itself," N.J. Stat. Ann. § 2C:58-35(a)(1)—such as selling to prohibited purchasers in violation of 18 U.S.C. § 922(d), or selling "ghost guns" in violation of N.J. Stat. Ann. § 2C:39-9(k). Because NSSF's arguments would at most justify severing Section 58-35's reasonableness prongs, any injunction should leave Section 58-35's "unlawful" prong undisturbed.

## III.    NSSF's Unreached Claims Fall Short.

### A.    Dormant Commerce Clause.

NSSF's Commerce Clause claim was always hard to square with precedent and first principles, but the subsequent decision in *National Pork Producers Council v. Ross* (*NPPC*), No. 21-468, 2023 WL 3356528 (May 11, 2023), makes it impossible. NSSF's sole "dormant" Commerce Clause theory is that any state statute imposing liability "for wholly out-of-state conduct" is "per se invalid" under cases like *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Br.38-39. Last week, the Supreme Court unanimously held otherwise. *See NPPC*, 2023 WL 3356528, at *8 (rejecting identical argument that *Healy* supports an "'almost per se' rule forbidding

enforcement of state laws that have the 'practical effect of controlling commerce outside the State'"); *accord id.* at *18 (Roberts, C.J., concurring in part and dissenting in part). Rather, the core ambit of the dormant Commerce Clause is "the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Id.* at *8 (majority opinion). Because Section 58-35 is undisputedly evenhanded, NSSF's "extraterritoriality" claim collapses.

The *NPPC* Court did fracture over how, when, and whether to permit claims under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), but that has no bearing here. NSSF long ago abandoned any argument that Section 58-35 contravenes *Pike*, even on appeal, and even after the State's invitations. *See, e.g.*, NJ Br.40 ("While it is unclear whether NSSF still presses a *Pike* argument at all, NSSF has plainly failed to meet its burden if so."). And for good reason. Even assuming courts could effectively balance burdens on interstate commerce with New Jersey's public-safety interests, *but see NPPC*, 2023 WL 3356528, at *12-13 (plurality opinion), it is incumbent on NSSF to establish a record that Section 58-35 works a "substantial burden" on interstate commerce and that such burdens greatly outweigh the public-safety benefits. *See id.* at *13-14 (majority opinion); *id.* at *17 (Sotomayor, J., concurring in part). NSSF failed to introduce any such evidence.

B.    <u>First Amendment</u>.

Section 58-35's marketing provisions are commercial-speech regulations that easily satisfy intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980); *City of Austin v. Reagan Nat'l Advert. Of Austin, LLC*, 142 S. Ct. 1464, 1474 (2022) (reaffirming that *Central Hudson* governs commercial-speech regulations regardless of *content* discrimination). And NSSF offers little to show it can prevail under *Central Hudson*. After all, *Central Hudson* begins by asking whether the speech concerns unlawful activity or misleads. *Bank of Hope v. Chon*, 938 F.3d 389, 395 (3d Cir. 2019). NSSF identifies no lawful, non-misleading speech that Section 58-35's bar on unreasonable marketing would seem to cover. That alone dispatches NSSF's overbreadth argument.

NSSF unsuccessfully seeks to avoid this result by maintaining its claim that Section 58-35 is viewpoint-discriminatory because it "applies only to 'marketing'" of guns. Br.41. That argument would eviscerate all commercial-speech doctrine, which by definition applies solely to "speech that does no more than propose a commercial transaction," *Bank of Hope*, 938 F.3d at 394 n. (citation omitted)—just as Section 58-35's marketing provisions do. Indeed, the very cases NSSF cites applied *Central Hudson* to advertising regulations involving specific products. *E.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) (cited at NSSF Br.42). And that is why NSSF's sole authority in support of "heightened scrutiny," Br.43-44, is

a sentence of dicta from *Greater Phila. Chamber of Com. v. City of Philadelphia*, in which this Court *rejected* the plaintiff's request for strict scrutiny but speculated that some laws may have such extreme "practical effect[s]" that greater scrutiny "may be necessary." 949 F.3d 116, 139 (3d Cir. 2020). That proves nothing here.

NSSF's "underinclusive[ness]" argument, Br.44, likewise fails. NSSF sidesteps that "the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (citation omitted). This case illustrates why: NSSF's claim that governments cannot regulate firearma-marketing without simultaneously regulating "action and horror films" and "violent video games," Br.44, among other proposed targets, would invalidate all but the most sweeping regulation. NSSF's sole citation—*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011)—was not a commercial-speech case and offers no traction here.

C.    Vagueness.

NSSF no longer seriously argues that a civil law requiring reasonable conduct by industry actors is void for vagueness. Indeed, NSSF does not dispute that its claim would render much of tort law vague. It does not respond to the multitude of cases rejecting this argument, *see* NJ Br.42-43—or cite any cases supporting its view, presumably because none exist. Instead, NSSF contends that invoking "the common-law definition of reasonableness" to demonstrate a lack of vagueness only "begs the

question of how the PLCAA could preempt common-law nuisance claims but not [Section 58-35]." Br.49. But that simply rehashes NSSF's PLCAA argument; it supports no Due Process Clause claim.

NSSF thus tries a new (but also unavailing) argument: that Section 58-35 violates the Due Process Clause through its definition of "proximate cause." Br.49-50.[7] But that, too, rehashes a PLCAA argument—and is inconsistent with blackletter principles of tort law in many States, including New Jersey, that distinguish intervening and superseding causes. *See supra* at 18-19; Scholars Br.14 (collecting examples). Even if (as NSSF proposes without citation) the Due Process Clause has something to say about how States define "proximate cause" in tort, linking liability to a "reasonably foreseeable" harm is nowhere near such a hypothetical constitutional floor.

D.    Second Amendment.

NSSF's conclusory claim that Section 58-35 "trenches on conduct protected by the Second Amendment," Br.46, lacks support. Instead, the conduct regulated by Section 58-35 falls well outside what the Second Amendment protects: the right of "law-abiding citizens" to "keep" and "bear" arms. *District of Columbia v. Heller*, 554 U.S. 570, 582-83, 625 (2008); *accord N.Y. State Rifle & Pistol Ass'n v. Bruen*,

---

[7] Though elsewhere eager to press forfeiture, *see* Br.21-22, NSSF never made this argument in its preliminary-injunction brief, *see* JA56-89. *If* this Court declines to address the private-right issue, the same logic would apply here.

142 S. Ct. 2111, 2122 (2022). Section 58-35 imposes no burden on those rights, which explains why NSSF never pointed to a scintilla of evidence that it has.

Instead, Section 58-35 merely imposes "conditions and qualifications on the commercial sale of arms"—regulations that are "presumptively lawful." *Heller*, 554 U.S. at 627 & n.26; *accord Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). That makes sense, because "the Second Amendment does not independently protect a proprietor's right to sell firearms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 690 (9th Cir. 2017).[8] While the State recognizes some commercial restrictions could conceivably implicate the Second Amendment by actually infringing on access, *see* NJ Br.49; *Pena v. Lindley*, 898 F.3d 969, 1007-08 (9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part)), NSSF proffered *no* evidence that Section 58-35 has any such effect. Given the dearth of precedent and record support for *NSSF's* claim, "the analysis can stop there." *Bruen*, 142 S. Ct. at 2126.

## IV.    NSSF Failed To Show Irreparable Harm.

While this Court can reverse on jurisdiction or the merits, *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), NSSF also failed to prove irreparable harm. As to its immunity theory, Br.51, NSSF cannot explain how the possibility of

---

[8] NSSF wrongly claims this Court should ignore its own holding that "no court" has held that "the Second Amendment secures a standalone right to *sell* guns." Br.46 (quoting *Drummond v. Robinson Twp.*, 9 F.4th 217, 230 (3d Cir. 2021)). But that observation remains true today, even after *Bruen*.

suits from which it believes it enjoys immunity works irreparable harm. As noted, immunities protect parties from trial and discovery. *See Mitchell*, 472 U.S. at 525-26; *supra* at 6. Having to file a motion to dismiss does not qualify. *Cf. Sherwin-Williams*, 968 F.3d at 270 (noting any "injury" from hypothetical suit "would not be irreparable" where a defendant can "raise those claims as affirmative defenses").

As for compliance costs, NSSF Br.51, regardless of the Eleventh Amendment, NSSF must still make a non-speculative showing that there *are* costs to recoup, *see Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000)—which it failed to do. NSSF has never claimed its members actually *did* anything different after Section 58-35's enactment or in the four-and-a-half months before NSSF filed suit. Mere supposition that members must take additional steps to comply is particularly speculative where *the State's* evidence indicates NSSF and its members already know how to comply with such measures. *See* JA161-62; Busse Br.4-6; Everytown Br.21-22. Nor can such speculative claims overcome the clear harm to state sovereignty from invalidating a law before it is even enforced, *see Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018), let alone eliminating a tool that could protect the public from egregious misconduct.

## <u>CONCLUSION</u>

This Court should reverse the decision below.

Respectfully submitted,

MATTHEW J. PLATKIN
Attorney General of New Jersey

By:     /s/ Michael L. Zuckerman
Michael L. Zuckerman
Deputy Solicitor General

Dated:  May 15, 2023

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1) and L.A.R. 31.1(c), I certify that:

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because the brief contains 6,499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and thus does not exceed the 6,500-word limit.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), having been prepared in a proportionally spaced typeface of at least 14 points set in Times New Roman.

3.     This brief complies with L.A.R. 31.1(c) in that the text of the electronic brief is identical to the text of the paper copies.

4.     This brief complies with L.A.R. 31.1(c) in that prior to being electronically submitted, it was scanned by the following virus-detection software and found to be free from computer viruses:

> Company: McAfee, Inc.
> Product: McAfee Endpoint Security, version 10.7.

Dated: May 15, 2023                      /s/ Michael L. Zuckerman
                                         Michael L. Zuckerman
                                         Deputy Solicitor General
                                         Office of the New Jersey Attorney General

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.

 /s/ Michael L. Zuckerman
Michael L. Zuckerman
Deputy Solicitor General
Office of the New Jersey Attorney General